**Steven A. Kraemer,** OSB No. 882476
E-mail: skraemer@cisoregon.org
**David C. Lewis,** OSB No. 953348
E-mail: dlewis@cisoregon.org
**KRAEMER, LOPEZ & LEWIS**
P.O. Box 1469
Lake Oswego, OR 97035
Telephone: (800) 922-2684
Facsimile: (503) 763-3900

      Of Attorneys for Defendant

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF OREGON

## PORTLAND DIVISION

|  |  |
|---|---|
| **KATHLEEN DUNLAP,** a personal representative of the Estate of James Ross Dunlap, Jr., deceased**,** and **KATHLEEN DUNLAP**, individually,<br><br>        Plaintiffs,<br><br>   v.<br><br>**CITY OF SANDY**,<br><br>        Defendants. | No. 3:17-cv-01749-YY<br><br>**DEFENDANT'S MOTION TO DISMISS**<br><br>**ORAL ARGUMENT REQUESTED** |

**KRAEMER, LOPEZ & LEWIS**
**Not a Partnership**
**Employees of CIS (Citycounty Insurance Services)**
**P.O. Box 1469**
**Lake Oswego, OR 97035**
**Telephone: (800) 922-2684**
**Facsimile: (503) 763-3900**

## TABLE OF CONTENTS

MOTION ...................................................................................................................... 1

LEGAL MEMORANDUM ........................................................................................... 1

I.      INTRODUCTION .............................................................................................. 1

II.     STANDARD OF REVIEW ................................................................................ 2

III.    LEGAL MEMORANDUM ................................................................................ 3

A.      Plaintiff's ADA and Rehabilitation Act Claims Fail as a Matter of Law. ........... 3

        1.      Kathleen Dunlap Lacks Standing to Bring Individual Claims Under 42 U.S.C.
                § 12132 and Section 504 of the Rehabilitation Act. .................................... 4

        2.      Failing to Arrest Someone Who Subsequently Commits Suicide is Not a Recognized
                Claim Under 42 U.S.C. § 12132 and Section 504 of the
                Rehabilitation Act. ....................................................................................... 6

                a.      If Decedent Was Regarded as Disabled, Defendant Was Not Obligated to
                        Provide Him with Reasonable Accommodations as a Matter of Law. .................. 8

                b.      To the Extent that the ADA and Rehabilitation Act Envision Claims for
                        Failure to Train, Plaintiff Fails to Allege Sufficient Facts to Establish
                        Deliberate Indifference by Defendant. .................................................. 9

B.      Plaintiff's Section 1983 Claim Fails to State a Claim ....................................... 10

        1.      A Section 1983 Claim Cannot be Used to Enforce Rights Under the ADA
                and the Rehabilitation Act. .......................................................................... 10

        2.      The Substantive Due Process Claim with its Reliance on ORS 133.055
                Fails to State a Claim .................................................................................. 11

        3.      Plaintiff Does Not Allege a Viable Monell Claim Based on a Failure to Train ........ 16

C.      Plaintiff's Wrongful Death Claim Fails as a Matter of Law ................................ 18

        1.      Plaintiff Cannot Bring a Separate Negligence Claim on Her Own Behalf ................ 18

        2.      Plaintiff Fails to State a Viable Wrongful Death Claim Based on Alleged Negligence
                or Negligent Training .................................................................................. 20

    IV.     CONCLUSION ................................................................................................. 23

**KRAEMER, LOPEZ & LEWIS**
**Not a Partnership**
**Employees of CIS (Citycounty Insurance Services)**
**P.O. Box 1469**
**Lake Oswego, OR 97035**
**Telephone: (800) 922-2684**
**Facsimile: (503) 763-3900**

# TABLE OF AUTHORITIES

**Cases**

*Armstrong v. Wilson*, 124 F.3d 1019 (9th Cir. 1997) ..................................................... 3

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ........................................................................... 2

*Associated Gen. Contractors of Amer. v. Metropolitan Water Dist. of S. Cal.*, 159 F.3d 1178 (9th Cir. 1998).................................................................................................... 2

*Baaske v. City of Rolling Meadows*, 191 F. Supp. 2d 1009 (N.D. Ill. 2002). ................ 4

*Bjorndal v. Weitman*, 344 Or. 470, 184 P.3d 1115 (2008). .......................................... 21

*Bresaz v. Cty. of Santa Clara*, 136 F. Supp. 3d 1125 (N.D. Cal. 2015) ......................... 8

*Buchanan v. Maine*, 469 F.3d 158 (1st Cir. 2006)........................................................... 9

*Cafasso, U.S. ex rel. v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047 (9th Cir. 2011). ... 2

*Cetacean Community v. Bush*, 386 F.3d 1169 (9th Cir. 2004) ......................................... 4

*Chapman v. Mayfield*, 358 Or. 196, 361 P.3d 566 (2015) ..................................... 20, 21

*Cherry v. City Coll. of S.F.*, No. C 04-04981 WHA, 2006 WL 6602454 (N.D. Cal. Jan. 12, 2006)............................................................................................................. 11

*Christie v. Iopa*, 176 F.3d 1231 (9th Cir. 1999)..................................................... 16, 17

*City of Canton v. Harris,* 489 U.S. 378 (1989)...................................................... 17, 18

*City & Cty. of San Francisco, Calif. v. Sheehan*, 135 S. Ct. 1765 (2015)...................... 7

*Clifford v. Turk*, No. CIV. 98-1365-AS, 2000 WL 249492 (D. Or. Feb. 22, 2000).............. 15, 16

*Connick v. Thompson*, 563 U.S. 51 (2011)..................................................................... 17

*Dauven v. George Fox Univ.*, No. CV. 09-305-PK, 2010 WL 6089077 (D. Or. Dec. 3, 2010)... 21

*DeShaney v. Winnebago County Department of Social Services,* 489 U.S. 189 (1989)............................................................................................ 11, 12, 13, 14

*Duvall v. Cnty. of Kitsap,* 260 F.3d 1124 (9th Cir. 2001) ............................................. 6

*Fazzolari v. Portland School Dist. No. 1J,* 303 Or. 1, 734 P.2d 1326 (1987).............................. 20

*Gillette v. Delmore,* 979 F.2d 1342 (9th Cir. 1992)....................................................... 16

**KRAEMER, LOPEZ & LEWIS**
**Not a Partnership**
**Employees of CIS (Citycounty Insurance Services)**
**P.O. Box 1469**
**Lake Oswego, OR 97035**
**Telephone: (800) 922-2684**
**Facsimile: (503) 763-3900**

*Givens v. Cty. of Sacramento*, No. 215CV0720JAMKJNPS, 2016 WL 6599810
(E.D. Cal. Nov. 7, 2016) .......................................................................................... 10

*Glass v.* Hillsboro *Sch. Dist. 1J*, 142 F. Supp. 2d 1286 (D. Or. 2001) ........................................... 4

*Hainze v.* Richards, 207 F.3d 795 (5th Cir. 2000) .......................................................................... 9

*Henry A. v.* Willden*, 678 F.3d 991 (9th Cir. 2012) ....................................................................... 11

*Hill v. Baca*, No. CV 08-03834 CAS (AJW), 2010 WL 1727655 (C.D. Cal. Apr.
26, 2010) ..................................................................................................................... 11

*Holbrook v. City* of *Alpharetta*, 112 F.3d 1522 (11th Cir. 1997) .......................................... 10, 11

*Horwell by* Penater *v. Oregon Episcopal School*, 100 Or. App. 571, 787 P.2d 502 (1990)......... 19

*Hughes v. White*, 289 Or. 13, 609 P.2d 365 (1980) ...................................................................... 18

*J.H. ex rel. J.P. v. Bernalillo County*, No. CIV 12-0128 JB/LAM, 2014 WL 3421037 (D.N.M.
July 8, 2014), *aff'd*, 806 F.3d 1255 (10th Cir. 2015) ............................................. 9, 10

*Joshi v.* Providence *Health Sys. of Oregon Corp.*, 342 Or. 152, 149 P.3d 1164 (2006) ............. 21

*Long v. Cnty. of Los Angeles*, 442 F.3d 1178 (9th Cir. 2006) ...................................................... 10

*Lujan v.* Defenders *of Wildlife,* 504 U.S. 555 (1992). .................................................................... 4

*Micek v. City* of *Chicago,* No. 98 C 6757, 1999 WL 966970 (N.D. Ill. Oct. 4, 1999)................... 6
*Monell v. New York City Dept. of Social Servs.,* 436 U.S. 658 (1978)........................................ 17

*Moore v. City of Berkeley*, No. C14-00669 CRB, 2016 WL 6024530 (N.D. Cal. Oct. 14, 2016) . 8

*Moss v. U.S.* Secret *Service,* 572 F.3d 962 (9th Cir. 2009)............................................................. 2

*Patten v. Leach*, No. 3:15-CV-0891-AC, 2016 WL 5928803 (D. Or. Oct. 11,
2016) ..................................................................................... 12, 13, 14, 15, 16

*Roberts v. City of Omaha*, 723 F.3d 966 (8th Cir. 2013)................................................................. 9

*Robertson v.* Las *Animas Cty. Sheriff's Dep't*, 500 F.3d 1185 (10th Cir. 2007) ........................... 7

*Sacchetti v.* Gallaudet *Univ.*, 181 F. Supp. 3d 107 (D.D.C. 2016) ................................................. 9

*Savage v.* Glendale *Union High Sch.,* 343 F.3d 1036 (9th Cir. 2003)............................................ 4

*Save Our* Summers *v. Wash. State Dep't of Ecology*, 132 F. Supp. 2d 896 (E.D. Wash. 1999).. 11
*Schreiber v. Pima Cty.*, No. CV-14-2363-TUC-DCB, 2017 WL 3446747 (D. Ariz. Aug. 10,
2017) ........................................................................................................................... 11

KRAEMER, LOPEZ & LEWIS
**Not a Partnership**
**Employees of CIS (Citycounty Insurance Services)**
P.O. Box 1469
Lake Oswego, OR 97035
Telephone: (800) 922-2684
Facsimile: (503) 763-3900

*Sheehan v. City & Cty. of San Francisco*, 743 F.3d 1211 (9th Cir. 2014),
  *rev'd in part on unrelated grounds, City & Cty. of San Francisco, Calif. v. Sheehan*, 135
  S. Ct. 1765 (2015) ............................................................................................ 7, 17

*Simenson v. Hoffman,* No. 95 C 1401, 1995 WL 631804 (N.D. Ill. Oct. 24, 1995) .................. 5, 6

*Son v.* Ashland *Community Healthcare Services,* 239 Or. App. 495, 244 P.3d 835 (2010)......... 21

*Souza v.* Pina*,* 53 F.3d 423 (1st Cir. 1995) .......................................................... 15, 16

*Town of* Castle *Rock, Colo. V. Gonzales*, 545 U.S. 748, 769 (2005).............................. 13, 14, 15

*Trevino v. Gates,* 99 F.3d 911 (9th Cir. 1996)........................................................ 17

*U.S. Dep't of Transp. v. Paralyzed Veterans of Am.*, 477 U.S. 597 (1986)................................... 3

*Van* Patten *v. Washington Cty. by & through Washington Cty. Sheriff's Office*, No.
  3:15-CV-0891-AC, 2017 WL 2616888 (D. Or. June 16, 2017) ............................................. 19

*Vinson v. Thomas*, 288 F.3d 1145 (9th Cir. 2002) .............................................. 3, 10, 11

*Waller v. City of Danville*, 515 F. Supp. 2d 659 (W.D. Va. 2007)................................. 9

*Weinreich v. L.A. County Metro. Transp. Auth.*, 114 F.3d 976 (9th Cir. 1997) ........................ 3, 7

*Whelan v. Albertson's, Inc.*, 129 Or. App. 501, 879 P.2d 888 (1994)........................................ 22

**Statutes, Regulations, and Rules**

29 U.S.C. § 794(a) ............................................................................................... 3

42 U.S.C. § 12102(1) ....................................................................................... 8

42 U.S.C. § 12132 ..............................................................................1, 3, 4, 7, 9

42 U.S.C. § 12133 ...................................................................................... 4

42 U.S.C. § 12201(h) ...................................................................................... 8

42 U.S.C. § 1983 ............................................................................. 1, 4, 10

34 C.F.R. § 104.4 ....................................................................................... 3

Fed. R. Civ. P. 12(b)(1).................................................................................. 2, 4

Fed R. Civ. P. 12(b)(6).................................................................................. 1, 2
Local Rule 7-1......................................................................................... 1

ORS 30.020............................................................................ 18, 19, 20, 21

KRAEMER, LOPEZ & LEWIS
**Not a Partnership**
**Employees of CIS (Citycounty Insurance Services)**
**P.O. Box 1469**
**Lake Oswego, OR 97035**
**Telephone: (800) 922-2684**
**Facsimile: (503) 763-3900**

ORS 30.075(3) ................................................................................................... 18

ORS 133.055 ................................................................... 8, 12, 13, 14, 15, 20

**Page v – DEFENDANT'S MOTION TO DISMISS**

**KRAEMER, LOPEZ & LEWIS**
**Not a Partnership**
**Employees of CIS (Citycounty Insurance Services)**
**P.O. Box 1469**
**Lake Oswego, OR 97035**
**Telephone: (800) 922-2684**
**Facsimile: (503) 763-3900**

## LOCAL RULE 7-1 CERTIFICATION

Pursuant to LR 7-1, the undersigned certifies that on December 11, 2017, defendant's counsel conferred with plaintiff's counsel, Dan Snyder, by telephone conference and discussed the claims, defenses, and issues that are the subject of defendant's motion to dismiss. The parties were unable to resolve the subject matter of this motion and the court's ruling is necessary on this matter.

## MOTION

Pursuant to Federal Rules of Civil Procedure 12(b)(1), 12(b)(6) and Local Rule 7-1(b), defendant City of Sandy moves this Court to dismiss plaintiff's claims against it for (1) lack of subject matter jurisdiction; and (2) failure to state a claim. In support of this motion, pursuant to LR 7-1(c), defendant relies upon the Legal Memorandum set forth below.

## LEGAL MEMORANDUM

## I.   INTRODUCTION

Plaintiff, as personal representative for the estate of decedent James Ross Dunlap and in her individual capacity, brings four claims against defendant: (1) violation of the Ameicans with Disabilities Act (ADA) under 42 U.S.C. § 12132; (2) ) violation of Section 504 of the federal Rehabilitation Act; (3) a substantive due process claim based on alleged "unconstitutional policies and procedures for interacting with mentally ill persons" and an alleged failure to train under 42 U.S.C. § 1983; and (4) a wrongful death claim based on defendant's alleged negligence.

This case is the result of a tragedy that, contrary to plaintiff's conclusory allegations, has no factual or legal relationship to whether or not the City's police officers should have arrested decedent James Dunlap for possible domestic violence on two separate occasions, the first two months before he committed suicide, and again days before his death.

There was no violation of decedent's constitutional rights because the City is not required to protect citizens from each other or, in the case of decedent Dunlap, himself. The Section 1983 substantive due process and *Monell* claim should be dismissed because decedent Dunlap did not suffer a deprivation of a constitutionally protected interest by any actions of defendant related to his

**Page 1 – DEFENDANT'S MOTION TO DISMISS**

KRAEMER, LOPEZ & LEWIS
Not a Partnership
Employees of CIS (Citycounty Insurance Services)
P.O. Box 1469
Lake Oswego, OR 97035
Telephone: (800) 922-2684
Facsimile: (503) 763-3900

suicide; and (2) plaintiff fails to allege facts demonstrating that there was a municipal policy, custom or practice to specifically deprive decedent of his constitutional right not to be discriminated against because of any alleged lack of training by the Sandy Police Department (SPD).

The wrongful death claim based on alleged negligence fails because it was not reasonably foreseeable that not arresting plaintiff for alleged domestic violence would have resulted in his suicide. And like the *Monell* claim, there is no support for the negligent training claim against the City. As set forth below, plaintiff's four claims should be dismissed.

## II.    STANDARD OF REVIEW

The City's motion is made pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6). This Court is familiar with the post-*Iqbal* pleading standards that govern these motions. A complaint must contain factual allegations that state a claim "that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). It is not sufficient that allegations "conceivably" could state a claim; the theory must, in fact, be "plausible." *Id.* at 679. In assessing "plausibility," the court must draw on its "judicial experience and common sense" and consider "obvious alternative explanation[s]." *Cafasso, U.S. ex rel. v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1056 (9th Cir. 2011).

A "pleading that offers 'labels and conclusions' or a 'formulaic recitation of the elements of a cause of action will not do . . . . Nor does a complaint suffice if it tenders 'naked assertion[s] devoid of further factual enhancement." *Iqbal*, 556 U.S. at 679. For a complaint to survive a motion to dismiss, the non-conclusory factual content and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief. *Moss v. U.S. Secret Service*, 572 F.3d 962, 969 (9th Cir. 2009). This Court also must disregard legal conclusions that masquerade as factual allegations, which are "not entitled to the assumption of truth." *Id.*; *Associated Gen. Contractors of Amer. v. Metropolitan Water Dist. of S. Cal.*, 159 F.3d 1178, 1181 (9th Cir. 1998) (conclusory allegations of law and unwarranted inferences not sufficient to defeat motion to dismiss).

**Page 2 – DEFENDANT'S MOTION TO DISMISS**

KRAEMER, LOPEZ & LEWIS
Not a Partnership
Employees of CIS (Citycounty Insurance Services)
P.O. Box 1469
Lake Oswego, OR 97035
Telephone: (800) 922-2684
Facsimile: (503) 763-3900

### III.    LEGAL MEMORANDUM

### A.    Plaintiff's ADA and Rehabilitation Act Claims Fail as a Matter of Law.

The 42 U.S.C. § 12132 claim on behalf of the estate and Kathleen Dunlap alleges that defendant violated Title II of the ADA based on an alleged policy "not to get involved when officers were dealing with a mentally ill individual," "failing to make reasonable modifications in their policies" regarding "accessibility for individuals with disabilities," and allegedly "failing to arrest [decedent Dunlap] for domestic violence which would have led to intervention." (Compl. ¶ 39).

Without conceding that the City receives federal funding related to its police department, which is a requirement to bring a viable claim under Section 504 of the Rehabilitation Act,[1] the Section 504 claim similarly alleges that "Defendant's actions and omissions . . . violated Plaintiffs' rights under the Rehabilitation Act by excluding them or denying them the benefits of Defendant's services solely because of Mr. Dunlap's disability." (Compl. ¶ 48).

The Ninth Circuit analyzes a Section 504 claim in the same manner as a Title II ADA claim, noting that there is "no significant difference in the analysis of rights and obligations created by the two acts." *Vinson v. Thomas*, 288 F.3d 1145, 1152 n.7 (9th Cir. 2002); *Weinreich v. Los Angeles County Metro. Transp. Auth.*, 114 F.3d 976, 978 (9th Cir. 1997) (Title II of the ADA was expressly modeled after Section 504 of the Rehabilitation Act); *Armstrong v. Wilson*, 124 F.3d 1019, 1023 (9th Cir. 1997) (noting Congress has directed that the ADA and RA be construed consistently). Both claims should be dismissed for the following reasons.

---

[1] Section 504 of the Rehabilitation Act provides that "no otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 29 U.S.C. § 794(a); *see also* 34 C.F.R. § 104.4. Congress limited the scope of Section 504 to those who actually "receive" federal financial assistance because it sought to impose Section 504 coverage as a form of contractual cost of the recipient's agreement to accept the federal funds. *U.S. Dep't of Transp. v. Paralyzed Veterans of Am.*, 477 U.S. 597, 605 (1986).

**Page 3 – DEFENDANT'S MOTION TO DISMISS**

KRAEMER, LOPEZ & LEWIS
Not a Partnership
Employees of CIS (Citycounty Insurance Services)
P.O. Box 1469
Lake Oswego, OR 97035
Telephone: (800) 922-2684
Facsimile: (503) 763-3900

1.    <u>Kathleen Dunlap Lacks Standing to Bring Individual Claims Under 42 U.S.C. § 12132 and Section 504 of the Rehabilitation Act</u>.

The claims under 42 U.S.C. § 12132 and Section 504 of the Rehabilitation Act include claims brought by plaintiff Kathleen Dunlap in her individual capacity. (Compl. ¶ 31-51). The claims allege that "Defendant discriminated against Mrs. Dunlap because of her association with Mr. Dunlap, a person with a disability." (Compl. ¶¶ 38, 44, 48). Because Dunlap lacks standing to bring these claims in her individual capacity, her individual ADA and Rehabilitation Act claims should be dismissed for lack of subject matter jurisdiction.

A motion to dismiss under Fed. R. Civ. P. 12(b)(1) tests the subject matter jurisdiction of the court. *Savage v. Glendale Union High Sch.,* 343 F.3d 1036, 1039-40 (9th Cir. 2003). A federal court lacks subject matter jurisdiction over a suit brought by a plaintiff without standing. *Cetacean Community v. Bush,* 386 F.3d 1169, 1174 (9th Cir. 2004). In general, to establish constitutional standing, a plaintiff must demonstrate: (1) an injury-in-fact; (2) a causal connection between the injury and the conduct complained of; and (3) the redressability of the injury. *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560 (1992). If the court determines a suit lacks constitutional standing, it must dismiss the claim under Rule 12(b)(1). *Cetacean Community,* 386 F.3d at 1174.

According to Title II of the ADA, "[n]o qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by such entity." 42 U.S.C. § 12132. Title II allows "any person alleging discrimination on the basis of disability in violation of section 12132" to bring an action. 42 U.S.C. § 12133. Title II does not expressly allow a non-disabled individual to bring a discrimination claim against a municipality. *Baaske v. City of Rolling Meadows*, 191 F. Supp. 2d 1009, 1015-16 (N.D. Ill. 2002).

This Court's holding in *Glass v. Hillsboro Sch. Dist. 1J*, 142 F. Supp. 2d 1286, 1287 (D. Or. 2001) is instructive. In *Glass*, defendant moved to dismiss the individual claims of the plaintiff parents for failure to state a claim and for lack of subject matter jurisdiction, because these plaintiffs

**Page 4 – DEFENDANT'S MOTION TO DISMISS**

KRAEMER, LOPEZ & LEWIS
Not a Partnership
Employees of CIS (Citycounty Insurance Services)
P.O. Box 1469
Lake Oswego, OR 97035
Telephone: (800) 922-2684
Facsimile: (503) 763-3900

failed to allege that they suffered a separate, direct injury because of defendant's alleged discrimination.  *Id.*

The *Glass* plaintiffs' claims were "associational" discrimination claims, that is, they derived their individual right to sue solely through their association with their disabled children.  *Id.* at 1287-88.  Specifically, they alleged that they suffered injury caused by defendant's discrimination solely because of their association with their disabled children, in the form of financial loss, anxiety, humiliation, and severe emotional distress.  *Id.* at 1289.  The Court noted that to state a valid claim for associational discrimination under either the ADA or Rehabilitation Act, a plaintiff must allege some "specific, direct, and separate injury" as a result of association with a disabled individual.  *Id.* at 1288.

Analytically, the "specific, direct, and separate injury" requirement is a "prudential" standing consideration related to the general Article III constitutional standing requirement.  *Id.* at 1288.  Accepting that Congress intended to provide for associational discrimination claims, even where the Article III standing requirements are met, plaintiffs must also demonstrate that they themselves were harmed; that is, that they suffered a specific, separate, and direct injury to themselves caused by defendant's actions.  *Id.* at 1288.

The plaintiff parents in *Glass* argued that they were not merely applying for services for their disabled children.  *Id.* at 1288.  Instead, they wanted to actively attend and observe defendant's educational program.  *Id.*  The parents *themselves* were seeking to participate in defendant's services, but defendant denied them the opportunity to participate because of their association with disabled children.  *Id.*

The *Glass* court disagreed, holding that the parents did not have some personal right— separate from and independent of their children's placement in the defendant school—to have their experts observe defendant's classrooms.  *Id.* at 1291-92.  Consequently, the court concluded that the plaintiff parents did not have a valid associational discrimination claim.  *Id.* at 1292.  *See also Simenson v. Hoffman,* No. 95 C 1401, 1995 WL 631804 at *2, 5-6 (N.D. Ill. Oct. 24, 1995) (holding

**Page 5 – DEFENDANT'S MOTION TO DISMISS**

KRAEMER, LOPEZ & LEWIS
Not a Partnership
Employees of CIS (Citycounty Insurance Services)
P.O. Box 1469
Lake Oswego, OR 97035
Telephone: (800) 922-2684
Facsimile: (503) 763-3900

that plaintiff, the father of a disabled child, did not suffer a separate injury when a doctor refused to treat the disabled child and asked the family to leave the care center); *Micek v. City of Chicago,* No. 98 C 6757, 1999 WL 966970, at *3-4 (N.D. Ill. Oct. 4, 1999) (dismissing plaintiff's complaint that he had standing to bring a suit under the ADA on the basis of his association with his son, a qualified individual with a disability, where the plaintiff did not suffer an ADA injury).

Like the case in *Glass*, here Kathleen Dunlap fails to satisfy the prudential standing considerations of "separate" and "direct" injury.  Plaintiff's alleged injuries are directly related to the alleged "discrimination" against her husband because of his alleged disability: "Defendant has damaged both Mrs. Dunlap and Plaintiff Estate by failing to arrest Mr. Dunlap in response to Mrs. Dunlap's report of domestic violence"; "Defendant's actions and omissions as described above violated Plaintiffs' rights under the Rehabilitation Act by excluding them or denying them the benefits of Defendant's services solely because of Mr. Dunlap's disability."  (Compl. ¶¶ 40, 48). Consequently, plaintiff's individual associational discrimination claims under the ADA and Rehabilitation Act fail as a matter of law.

 2.  Failing to Arrest Someone Who Subsequently Commits Suicide is Not a Recognized Claim Under 42 U.S.C. § 12132 and Section 504 of the Rehabilitation Act.

To recover monetary damages under Title II of the ADA a plaintiff must prove intentional discrimination on the part of the defendant.  *Duvall v. Cnty. of Kitsap,* 260 F.3d 1124, 1138 (9th Cir. 2001). In *Duvall*, the Ninth Circuit held that deliberate indifference is the appropriate standard to use in determining whether intentional discrimination occurred.  *Id.*  Deliberate indifference requires both knowledge that a harm to a federally protected right is substantially likely, and a failure to act upon that likelihood.  *Id.* at 1139.  A failure to act must be the result of conduct that is more than negligent and involves an element of deliberateness.  *Id.*

To prove that a public program or service violates Title II of the ADA, a plaintiff must show: (1) he is a qualified individual with a disability; (2) he was either excluded from participation in or denied the benefits of a public entity's services, programs, or activities, or was otherwise discriminated against by the public entity; and (3) such exclusion, denial of benefits or

**Page 6 – DEFENDANT'S MOTION TO DISMISS**

KRAEMER, LOPEZ & LEWIS
Not a Partnership
Employees of CIS (Citycounty Insurance Services)
P.O. Box 1469
Lake Oswego, OR 97035
Telephone: (800) 922-2684
Facsimile: (503) 763-3900

discrimination was by reason of his disability.  42 U.S.C. § 12132; *Weinreich v. L.A. County Metro. Transp. Auth.*, 114 F.3d 976, 978 (9th Cir. 1997).

The extent to which Title II of the ADA applies to arrests and post-arrest conduct by police officers is a question that is not yet settled.  *See City of San Francisco v. Sheehan*, 135 S. Ct. 1765, 1772-73, (2015) (declining to address the question whether and to what extent 42 U.S.C. § 12132 applies to the arrest of a qualified individual with a disability because the issue was not properly before the Supreme Court).  The Ninth Circuit currently recognizes two types of Title II ADA claims applicable to arrests: (1) wrongful arrest, where police wrongly arrest someone with a disability because they misperceive the effects of that disability as criminal activity; and (2) reasonable accommodation, where, although police properly investigate and arrest a person with a disability for a crime unrelated to that disability, they fail to reasonably accommodate the person's disability in the course of investigation or arrest.  *Sheehan v. City & Cty. of San Francisco*, 743 F.3d 1211, 1232 (9th Cir. 2014), *rev'd in part on unrelated grounds, City & Cty. of San Francisco, Calif. v. Sheehan*, 135 S. Ct. 1765 (2015).

In a Title II claim grounded in a public entity's alleged failure to provide a reasonable accommodation, the plaintiff bears the initial burden of producing evidence of the existence of a reasonable accommodation.  *Sheehan*, 743 F.3d at 1232-33.  And the entity must have knowledge that an individual's disability limits his ability to participate in or receive the benefits of defendant's services, which requires an accommodation of some kind.  *Robertson v. Las Animas Cty. Sheriff's Dep't*, 500 F.3d 1185, 1197 (10th Cir. 2007).

Based on the factual allegations, here neither type of Title II ADA arrest theory is viable.  Plaintiff's allegations that no arrest was ever made are the opposite of a viable claim, since there was neither a wrongful arrest nor a lawful arrest associated with a failure to accommodate.  *Sheehan*, 743 F.3d at 1232.  Because there was no "wrongful arrest," to the extent that the estate

**KRAEMER, LOPEZ & LEWIS**
**Not a Partnership**
**Employees of CIS (Citycounty Insurance Services)**
**P.O. Box 1469**
**Lake Oswego, OR 97035**
**Telephone: (800) 922-2684**
**Facsimile: (503) 763-3900**

bases its ADA Title II and Rehabilitation Act claims on ORS 133.055,[2] there is no legal authority establishing that such a claim is viable.  (Compl. ¶ 38).

To the extent that plaintiff bases the Title II and Rehabilitation Act claims on the reasonable-accommodation-during-arrest theory, the claims fail because there was nothing for defendant to "accommodate" during the encounters with decedent.  (Compl. ¶ 39).  Stated differently, the claim fails to allege that SPD caused decedent excessive injury or indignity by failing to reasonably accommodate his disability *during an arrest*, since it is undisputed that no arrest was made.  *Moore v. City of Berkeley*, No. C14-00669 CRB, 2016 WL 6024530, at *6 (N.D. Cal. Oct. 14, 2016).

> a.    *If Decedent Was Regarded as Disabled, Defendant Was Not Obligated to Provide Him with Reasonable Accommodations as a Matter of Law.*

Without admitting that decedent Dunlap was a qualified individual with a disability for ADA purposes, to the extent the estate alleges that decedent Dunlap was *regarded as* being disabled during his limited encounters with SPD, defendant was not obligated to provide the decedent reasonable accommodations as a matter of law.  (Compl. ¶ 34); *Bresaz v. Cty. of Santa Clara*, 136 F. Supp. 3d 1125, 1133 (N.D. Cal. 2015).  The ADA defines "disability" as: (A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment.  42 U.S.C. § 12102(1).

Under 42 U.S.C. § 12201(h), "a public entity under subchapter II . . . need not provide a reasonable accommodation or a reasonable modification to policies, practices, or procedures to an individual who meets the definition of disability in section 12102(1) of this title solely under subparagraph (C) of such section."  *Bresaz*, 136 F. Supp. 3d at 1133.  Thus, pursuant to these

---

[2] Under ORS 133.055(2)(a):

> [W]hen a peace officer responds to an incident of domestic disturbance and has probable cause to believe that an assault has occurred between family or household members, . . . , or to believe that one such person has placed the other in fear of imminent serious physical injury, the officer shall arrest and take into custody the alleged assailant or potential assailant.

**Page 8 – DEFENDANT'S MOTION TO DISMISS**

KRAEMER, LOPEZ & LEWIS
Not a Partnership
Employees of CIS (Citycounty Insurance Services)
P.O. Box 1469
Lake Oswego, OR 97035
Telephone: (800) 922-2684
Facsimile: (503) 763-3900

statutory provisions, defendant was not obligated to reasonably accommodate the decedent to the extent he was allegedly regarded as having suffered from a disability. *Id.*

> b. *To the Extent that the ADA and Rehabilitation Act Envision Claims for Failure to Train, Plaintiff Fails to Allege Sufficient Facts to Establish Deliberate Indifference by Defendant.*

The estate bases the ADA and Rehabilitation Act claims in part on an alleged failure to train. (Compl. ¶¶ 36, 44, 48). In *Sacchetti v. Gallaudet Univ.*, 181 F. Supp. 3d 107, 130 (D.D.C. 2016), plaintiffs alleged that defendant "fail[ed] to properly train its officers and personnel for encounters with disabled persons" and "fail[ed] to modify or implement its police policies, procedures [,] and training" resulting in discrimination against plaintiffs. The court noted that its Circuit had not addressed whether Title II of the ADA envisions failure-to-train claims such as the plaintiff's. *Id.* However, several district courts in outside jurisdictions had either declined to recognize the existence of such a claim or avoided addressing the question. *Id.*

For example, in *Buchanan v. Maine*, 469 F.3d 158, 177 (1st Cir. 2006), plaintiff contended that the policies put in place by the County and the training received by police officers was deficient. In particular, plaintiff took issue with the lack of procedures and training to assist officers in successfully communicating with mentally ill individuals. *Id.* The First Circuit held that an argument that police training, which was provided, was insufficient did not present a viable claim that plaintiff was "denied the benefits of the services . . . of a public entity" by reason of his mental illness, as required under 42 U.S.C. § 12132. *See also Hainze v. Richards*, 207 F.3d 795, 801 (5th Cir. 2000); *Waller v. City of Danville*, 515 F. Supp. 2d 659, 666 (W.D. Va. 2007) (finding no cause of action for failure to train under the ADA within the plain language of the statute), *aff'd*, 556 F.3d 171, 177 n.3 (4th Cir. 2009) (declining to explicitly recognize a cause of action under the ADA for failure to train).

Courts that have permitted a cause of action for failure to train under the ADA require the plaintiff to demonstrate "deliberate indifference." *See Roberts v. City of Omaha*, 723 F.3d 966, 976 (8th Cir. 2013); *J.H. ex rel. J.P. v. Bernalillo County*, No. CIV 12-0128 JB/LAM, 2014 WL

**KRAEMER, LOPEZ & LEWIS**
**Not a Partnership**
**Employees of CIS (Citycounty Insurance Services)**
**P.O. Box 1469**
**Lake Oswego, OR 97035**
**Telephone: (800) 922-2684**
**Facsimile: (503) 763-3900**

3421037, at *25 (D.N.M. July 8, 2014), ), *aff'd*, 806 F.3d 1255 (10th Cir. 2015).  Here, should this Court choose to permit a cause of action under the ADA for failure to train, the deliberate indifference standard should apply.

However, plaintiff's complaint contains no more than vague and conclusory allegations regarding alleged failure to train SPD officers.  *See, e.g., Givens v. Cty. of Sacramento*, No. 215CV0720JAMKJNPS, 2016 WL 6599810, at *5-6 (E.D. Cal. Nov. 7, 2016).  Plaintiff alleges no specific facts regarding obvious deficiencies in SPD training and supervision of its officers. (Compl. ¶¶ 36, 53 ).  Because plaintiff has not pled facts, as opposed to conclusory allegations, to support the claim that defendant was deliberately indifferent, plaintiff's failure to train basis for the ADA and Section 504 claims should be dismissed.  (Compl. ¶¶ 49, 53).

**B.      Plaintiff's Section 1983 Claim Fails to State a Claim.**

The estate's third claim alleges violations of 42 U.S.C. § 1983 based on alleged "unconstitutional policies and procedures for interacting with mentally ill persons" and "a substantive denial of due process by Defendant for the unconstitutional failure to train officers to interact with mentally ill persons and their family members[.]"  (Compl. ¶ 53).

Section 1983 provides a cause of action for the deprivation of any rights, privileges, or immunities secured by the Constitution and laws of the United States.  42 U.S.C. § 1983.  To state a claim under Section 1983, a plaintiff must allege two essential elements: (1) that a right secured by the Constitution or laws of the United States was violated; and (2) that the alleged violation was committed by a person acting under the color of state law.  *Long v. Cnty. of Los Angeles*, 442 F.3d 1178, 1185 (9th Cir. 2006).  The Section 1983 claim fails to state a claim for the following reasons.

1.      A Section 1983 Claim Cannot be Used to Enforce Rights Under the ADA and the
       Rehabilitation Act.

As a threshold matter, a Section 1983 claim cannot be used to enforce rights under the ADA and the Rehabilitation Act, both of which contain statutory schemes that already include comprehensive remedial measures.  *See Vinson v. Thomas*, 288 F.3d 1145, 1155-1156 (9th Cir.

**KRAEMER, LOPEZ & LEWIS**
**Not a Partnership**
**Employees of CIS (Citycounty Insurance Services)**
**P.O. Box 1469**
**Lake Oswego, OR 97035**
**Telephone: (800) 922-2684**
**Facsimile: (503) 763-3900**

2002).  The *Vinson* court specifically relied on *Holbrook v. City of Alpharetta*, 112 F.3d 1522 (11th Cir. 1997) in reaching its decision.  *Vinson*, 288 F.3d at 1156.

In *Holbrook*, the Eleventh Circuit held that a plaintiff suing a city could not "maintain a [Section] 1983 action in lieu of—or in addition to—a Rehabilitation Act or ADA cause of action if the only alleged deprivation is of the [plaintiff's] rights created by the Rehabilitation Act and the ADA."  *Id.* (quoting *Holbrook*, 112 F.3d at 1531); *see also Cherry v. City Coll. of S.F.*, No. C 04-04981 WHA, 2006 WL 6602454, at *12 (N.D. Cal. Jan. 12, 2006) (extending the holding in *Vinson* and holding "that the official/individual capacity distinction does not alter the preclusive effect of Title II [of the ADA]"); *Hill v. Baca*, No. CV 08-03834 CAS (AJW), 2010 WL 1727655, at *6 (C.D. Cal. Apr. 26, 2010) ("Section 1983 is not a vehicle to vindicate statutory rights secured by the ADA; rather, plaintiff may sue under the ADA directly."); *see also Save Our Summers v. Wash. State Dep't of Ecology*, 132 F. Supp. 2d 896, 910 (E.D. Wash. 1999) ("[Section] 1983 cannot be used to enforce rights created by a statutory scheme that already include comprehensive remedial measures.").

Here, plaintiff's Section 1983 claim is based on the alleged deprivation of decedent's constitutional rights created by the ADA and Rehabilitation Act related to his alleged disability. (Compl. ¶¶ 52-58).  Consequently, plaintiff is asserting rights under his Section 1983 claim that are covered by the ADA and Rehabilitation Act.  *Schreiber v. Pima Cty.*, No. CV-14-2363-TUC-DCB, 2017 WL 3446747, at *8-9 (D. Ariz. Aug. 10, 2017) (plaintiff's Section 1983 claims precluded by ADA and Rehabilitation Act claims).  As such, the Section 1983 claim is precluded by the ADA and Rehabilitation Act and should be dismissed.

  2.  The Substantive Due Process Claim with its Reliance on ORS 133.055 Fails to State a Claim.

Even assuming that a Section 1983 cause of action exists in conjunction with ADA/Rehabilitation Act claims, to the extent that plaintiff brings a substantive due process claim, it fails as a matter of law.  (Compl. ¶ 53).  This is so because in general, the government owes no due process duty to protect an individual from private action.  *DeShaney v. Winnebago County*

**Page 11 – DEFENDANT'S MOTION TO DISMISS**

KRAEMER, LOPEZ & LEWIS
Not a Partnership
Employees of CIS (Citycounty Insurance Services)
P.O. Box 1469
Lake Oswego, OR 97035
Telephone: (800) 922-2684
Facsimile: (503) 763-3900

*Department of Social Services,* 489 U.S. 189, 197 (1989); *see also Henry A. v. Willden,* 678 F.3d 991, 998 (9th Cir. 2012).

In the substantive due process analysis, it is the government entity's affirmative act of restraining the individual's freedom to act on his own behalf—through incarceration, institutionalization, or other similar restraint of personal liberty—which is the "deprivation of liberty" triggering the protections of the Due Process Clause, not its failure to act to protect his liberty interests against harms inflicted by other means. *DeShaney v,* 489 U.S. at 200.

Plaintiff's reliance on ORS 133.055 as a basis for the Section 1983 claim is misplaced because ORS 133.055 does not create municipal liability for a subsequent suicide such as occurred here. Even in a case where the failure to arrest a husband under ORS 133.055 was alleged to be responsible for the man's subsequent murder of his wife, this Court found no liability by the police under Section 1983.

In *Patten v. Leach,* No. 3:15-CV-0891-AC, 2016 WL 5928803, at *3 (D. Or. Oct. 11, 2016), plaintiff, Mrs. Van Patten's estate, brought a substantive due process claim under Section 1983, alleging that defendant police officers acted with deliberate indifference and deprived Melinda Van Patten of her life without due process in violation of her rights under the Fourteenth Amendment. The basis of the claim was the officers' failure to arrest Ken Van Patten or otherwise intervene in order to protect Mrs. Van Patten from a risk of injury or death of which they knew or should have known. *Id.*

This Court noted that the Due Process Clause does not require the state to protect citizens from each other. *Id.* In *DeShaney v. Winnebago County Dept. of Social Servs.*, 489 U.S. 189, 195 (1989), a case with "undeniably tragic" facts, the Supreme Court held that the Due Process clause does not "require the State to protect the life, liberty, and property of its citizens against invasion by private actors." *Id.*

Plaintiff in *Patten* argued that *DeShaney's* general bar to constitutional claims against the state for harms inflicted by a third party did not apply because ORS 133.055 created a special

**Page 12 – DEFENDANT'S MOTION TO DISMISS**

KRAEMER, LOPEZ & LEWIS
Not a Partnership
Employees of CIS (Citycounty Insurance Services)
P.O. Box 1469
Lake Oswego, OR 97035
Telephone: (800) 922-2684
Facsimile: (503) 763-3900

relationship between law enforcement officers and victims of domestic violence. *Id.* According to plaintiff, the special relationship created by ORS 133.055 created an affirmative obligation to provide domestic violence victims such as Mrs. Van Patten with adequate protective services. *Id.*

This Court disagreed, finding that this argument failed in light of both *DeShaney* and the Supreme Court's decision in *Town of Castle Rock, Colo. V. Gonzales*, 545 U.S. 748, 769 (2005) ("In light of today's decision and that in *DeShaney*, the benefit that a third party may receive from having someone else arrested for a crime generally does not trigger protections under the Due Process Clause, neither in its procedural nor in its 'substantive' manifestations."). *Id.* In *DeShaney*, the Supreme Court recognized a duty to provide adequate protective services can arise out of certain special relationships the state has with particular citizens. *DeShaney*, 489 U.S. at 198-200. The court noted, however, the special relationships that create an entitlement to due process protection arise "not from the State's knowledge of the individual's predicament or from its expressions of intent to help him, but from the limitation which it has imposed on his freedom." *Id.* at 200.

Where the state is aware of the dangers that a citizen faces in the "free world" but neither played any part in their creation nor did anything to render the citizen more vulnerable, the state has no constitutional duty to protect the citizen. *Id.* at 201. In other words, the special relationship stems not from the state's knowledge of a citizen's vulnerability but instead from limitations or burdens the state has imposed on the citizen. *Patten*, 2016 WL 5928803, at *3.

Viewed in a light most favorable to plaintiff Van Patten's estate, this Court noted that ORS 133.055 is the Oregon Legislature's expression of its intent to help domestic violence victims. *Id.* at *4. Interpreted by *DeShaney*, however, this expression of intent did not create a special relationship between defendant officers and Mrs. Van Patten. *Id.*; *DeShaney*, 489 U.S. at 200 (affirmative duty to protect does not arise from state's intent to help a citizen). Moreover, defendant officers placed

**Page 13 – DEFENDANT'S MOTION TO DISMISS**

KRAEMER, LOPEZ & LEWIS
Not a Partnership
Employees of CIS (Citycounty Insurance Services)
P.O. Box 1469
Lake Oswego, OR 97035
Telephone: (800) 922-2684
Facsimile: (503) 763-3900

no limitations on Mrs. Van Patten's liberty, played no part in the creation of any danger to her, and did not take any action to make her more vulnerable. *Patten*, 2016 WL 5928803, at *4.

The undisputed facts viewed in a light most favorable to the estate established the defendant officers were aware of the danger that Melinda Van Patten faced from her husband, whom they knew had a recent history of acting erratically and engaging in violence toward her, had access to guns, and of whom she had a genuine fear, but this knowledge did not give rise to any special relationship. *Id.* at *4; *DeShaney*, 489 U.S. at 200 (affirmative duty to protect does not arise from knowledge of individual's predicament). The facts showed the officers left Mrs. Van Patten in exactly the same position she would have been in had her neighbor never made the 911 call the morning before the murder. *Patten*, 2016 WL 5928803, at *4. Even with the hindsight perspective of Mrs. Van Patten's murder the next day, these facts did not give rise to a special relationship entitling Mrs. Van Patten to protection under the Fourteenth Amendment's Due Process Clause. *Id.*

Similarly, the Supreme Court's holding in *Castle Rock* supported a conclusion that ORS 133.055 did not create a special relationship between defendant officers and Mrs. Van Patten that entitled her to due process protections. *Id. Castle Rock* concerned enforcement of a restraining order against plaintiff's estranged husband, in which the Supreme Court found, despite the mandatory language in the relevant Colorado statute, that enforcement was not truly mandatory. *Id.* at 760. The Court noted "[a] well established tradition of police discretion has long coexisted with apparently mandatory arrest statutes" and a "true mandate of police action would require some stronger indication from the Colorado Legislature than 'shall use every reasonable means to enforce a restraining order.'" *Id.* at 760–61. In particular, the Court stated that the indirect nature of the benefit that a third party might receive from having someone else arrested for committing a crime was likely fatal to a cognizable procedural due process claim. *I d.* 766–68.

Like the Colorado statute at issue in *Castle Rock*, the language in ORS 133.055 appears mandatory in that it states an officer "*shall*" arrest an alleged or potential assailant when

**Page 14 – DEFENDANT'S MOTION TO DISMISS**

KRAEMER, LOPEZ & LEWIS
Not a Partnership
Employees of CIS (Citycounty Insurance Services)
P.O. Box 1469
Lake Oswego, OR 97035
Telephone: (800) 922-2684
Facsimile: (503) 763-3900

probable cause is present but is not "truly" mandatory. *Patten*, 2016 WL 5928803, at *5; *Castle Rock*, 545 U.S. at 760 ("We do not believe that these provisions of Colorado law truly made enforcement of restraining orders *mandatory*") (emphasis in original). Specifically, despite probable cause to believe an assault, menacing, or strangulation has occurred, an officer likely has some discretion to determine that the circumstances of the situation weigh against arrest in a particular domestic violence instance. *Patten*, 2016 WL 5928803, at *5; *Castle Rock*, 545 U.S. at 761–62.

In *Patten*, this Court concluded that the officers charged with arresting an assailant or alleged assailant in a domestic violence situation where there is probable cause must have some discretion to prioritize the importance of an arrest given the circumstances. Accordingly, because police officers have some discretion whether to grant or deny the benefit conferred in ORS 133.055, it is not a protected entitlement that creates a special relationship entitled to due process protections. *Patten*, 2016 WL 5928803, at *5; *Castle Rock*, 545 U.S. at 756. Moreover, even if it were, the indirect nature of the benefit was fatal to the estate's due process claim. *Patten*, 2016 WL 5928803, at *5; *Castle Rock*, 545 U.S. at 767.

In *Clifford v. Turk*, No. CIV. 98-1365-AS, 2000 WL 249492, at *1 (D. Or. Feb. 22, 2000), the estate of decedent Travis Clifford alleged that a defendant police officer started a rumor about Travis in violation of his constitutional rights, thereby precipitating his suicide. The estate also alleged that the Chief of Police, as the officer's supervisor, violated the constitutional rights of Travis by failing to discipline the officer for the rumor and/or failing to adequately train the officer with regard to the confidentiality of 911–emergency calls. *Id.*

In discussing the estate's constitutional claims, this Court relied on *Souza v. Pina,* 53 F.3d 423, 425 (1st Cir. 1995), a case involving suicide and qualified immunity, where the decedent killed himself after a district attorney and press secretary, through media interviews, created a link between the decedent and the murders of nine women. *Id.* at *3. The decedent's mother brought claims for violations of her son's right to be free from arbitrary and brutal

**Page 15 – DEFENDANT'S MOTION TO DISMISS**

**KRAEMER, LOPEZ & LEWIS**
**Not a Partnership**
**Employees of CIS (Citycounty Insurance Services)**
**P.O. Box 1469**
**Lake Oswego, OR 97035**
**Telephone: (800) 922-2684**
**Facsimile: (503) 763-3900**

punishment and her son's right not to be deprived of due process of law.  *Id.*; *Souza*, 53 F.3d at 425.

Because there were no allegations of direct state action, including actions to harm the decedent directly or impede his ability to seek treatment or avoid injury, the *Souza* court found there was no existing authority where defendants could have been reasonably aware their statements to the media violated a clearly established right, even when knowing suicide may occur.  *Clifford*, WL 249492, at *3; *Souza*, 53 F.3d at 426.

This Court agreed with the observation in *Souza* that, absent the kind of custodial relationship apparently contemplated by the Supreme Court in *DeShaney*, the Due Process Clause does not require the state to protect citizens from "private violence" in whatever form, including suicide.  *Clifford*, WL 249492, at *3; *Souza,* 53 F.3d at 427.  The lack of a custodial relationship discussed in *Souza* and *DeShaney* mirrored the situation in *Clifford*.  *Clifford*, WL 249492, at *3.  Decedent Travis was never in custody or restrained by the defendant officers and thus the Due Process Clause was not triggered by their failure to protect Travis against harming himself.  *Id.*

The same is true in this case, only more so, where the allegations try to shoehorn the attenuated facts into a Section 1983 substantive due process claim.  If there were no substantive due process violations in *Patten* and *Clifford*, there can be none here, where the only harm inflicted was by decedent Dunlap to himself.  The failure to arrest decedent under the domestic violence statute cannot serve as the basis of a viable Section 1983 claim.

> 3.   Plaintiff Does Not Allege a Viable *Monell* Claim Based on a Failure to Train.

For the same reasons discussed in Section IV.A.2, to the extent that plaintiff brings a *Monell* claim based on an alleged "policy" of the SPD of failing to train its officers to properly interact with mentally ill citizens, it also fails to state a claim.  (Compl. ¶¶ 36, 53).  Although a constitutional violation must result from "official municipal policy," a public entity need not expressly adopt the policy.  *Christie v. Iopa*, 176 F.3d 1231, 1235 (9th Cir. 1999). It is sufficient that the constitutional

**KRAEMER, LOPEZ & LEWIS**
**Not a Partnership**
**Employees of CIS (Citycounty Insurance Services)**
**P.O. Box 1469**
**Lake Oswego, OR 97035**
**Telephone: (800) 922-2684**
**Facsimile: (503) 763-3900**

violation occurred pursuant to a "longstanding practice or custom." *Gillette v. Delmore,* 979 F.2d 1342, 1346 (9th Cir. 1992).

A "custom" is a practice so "permanent and well-settled" and "persistent and widespread" that policy-making officials (not just lower-level employees) can be said to have either actual or constructive knowledge of it. *Monell v. New York City Dept. of Social Servs.,* 436 U.S. 658, 691 (1978). As a matter of law, there is no municipal "custom" where, for example, the alleged practice lasted for several months and related to only one employee. *Christie,* 176 F.3d at 1235, 1236-38 (plaintiffs failed to establish longstanding practice where they alleged that a county official singled them out for unique treatment); *see also Trevino v. Gates,* 99 F.3d 911, 918 (9th Cir. 1996) ("Liability for improper custom may not be predicated on isolated or sporadic incidents; it must be founded upon practices of sufficient duration, frequency and consistency that the conduct has become a traditional method of carrying out policy.").

A public entity's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train. *Connick v. Thompson,* 563 U.S. 51, 61 (2011). A policy of "inadequate training" is far more nebulous, and a good deal further removed from the constitutional violation, than was the policy in *Monell*. *Id.*

Only if a public entity's failure to train its employees in a relevant respect amounts to deliberate indifference to the rights of persons with whom the untrained employees come into contact can such a shortcoming be properly thought of as a "policy or custom" that is actionable under Section 1983. *Id.*; *Sheehan,* 743 F.3d at 1230; *City of Canton v. Harris,* 489 U.S. 378, 388 (1989) (local governmental entity's failure to train its employees can create Section 1983 liability only where failure to train amounts to deliberate indifference to the rights of persons with whom those employees are likely to come into contact);

Deliberate indifference is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action. *Connick,* 563 U.S. at 61.

**Page 17 – DEFENDANT'S MOTION TO DISMISS**

**KRAEMER, LOPEZ & LEWIS**
**Not a Partnership**
**Employees of CIS (Citycounty Insurance Services)**
**P.O. Box 1469**
**Lake Oswego, OR 97035**
**Telephone: (800) 922-2684**
**Facsimile: (503) 763-3900**

A pattern of similar constitutional violations by untrained employees is ordinarily necessary to demonstrate deliberate indifference for purposes of failure to train. *Id.*

Here, the complaint consists of conclusory allegations that the City had an unofficial policy for *Monell* purposes of "failure to train officers to interact with mentally ill persons and their family members" that "amounts to deliberate indifference to the right of persons with whom the police come in contact." (Compl. ¶ 53). The claim fails because the only allegations demonstrate that the actions taken with regard to the response to the 911 calls by Mrs. Dunlap were part of an isolated event specifically directed to decedent.

Moreover, there are no allegations that there is any history at the SPD, let alone a custom or practice, of this type of situation where SPD officers allegedly treated a citizen who subsequently committed suicide with "deliberate indifference" due to an inadequacy of training or anything even remotely similar in the past. (Compl. ¶¶ 1-69). Such a history would be required to put SPD on notice that its training in this regard was deficient. *City of Canton*, 489 U.S. at 390. Accordingly, plaintiff's *Monell* claim fails as a matter of law.

**C.    Plaintiff's Wrongful Death Claim Fails as a Matter of Law.**

    1.    Plaintiff Cannot Bring a Separate Negligence Claim on Her Own Behalf.

Plaintiffs' fourth claim is styled as "Negligence – Wrongful Death" without specifically alleging that the claim is based on Oregon's wrongful death statute, ORS 30.020. (Compl. ¶¶ 59-69). Regardless, the allegations make this a wrongful death action, limited by the remedies available under ORS 30.020. (Compl. ¶¶ 65-66).

ORS 30.020 provides, in part: "(1) When the death of a person is caused by the wrongful act or omission of another, the personal representative of the decedent, . . . may maintain an action against the wrongdoer, if the decedent might have maintained an action, had the decedent lived, against the wrongdoer for an injury done by the same act or omission." Consequently, ORS 30.020(1) provides that a wrongful death action may only be brought by the decedent's personal

**KRAEMER, LOPEZ & LEWIS**
**Not a Partnership**
**Employees of CIS (Citycounty Insurance Services)**
**P.O. Box 1469**
**Lake Oswego, OR 97035**
**Telephone: (800) 922-2684**
**Facsimile: (503) 763-3900**

representative, for the benefit of the designated beneficiaries. *Hughes v. White*, 289 Or. 13, 18, 609 P.2d 365 (1980).

A separate claim for relief, for wrongful death "on behalf of plaintiff," is not available because under ORS 30.075(3), "[i]f an action for wrongful death under ORS 30.020 . . . is brought, recovery of damages for disability, pain, suffering and loss of income during the period between injury to the decedent and the resulting death of the decedent may *only* be recovered in the wrongful death action." (emphasis added). *Van Patten v. Washington Cty. by & through Washington Cty. Sheriff's Office*, No. 3:15-CV-0891-AC, 2017 WL 2616888, at *2 (D. Or. June 16, 2017) (in claim under Oregon's wrongful-death statute, ORS 30.020, plaintiff may recover only specific categories of damages on behalf of the Estate).

Similarly, in *Horwell by Penater v. Oregon Episcopal School*, 100 Or. App. 571, 574, 787 P.2d 502 (1990), the Oregon Court of Appeals held that plaintiff was not permitted to bring an individual action to recover damages that she claimed to have sustained personally as a consequence of her mother's death. Accordingly, here a separate negligence claim on behalf of plaintiff individually, alleging that "[a]s a result of the negligence of Defendant, Mrs. Dunlap has sustained the following injuries, economic, and non-economic damages, including "[f]or her discomfort, emotional distress, suffering, and inconvenience and interference with usual and everyday activities as non-economic damages" and "economic damages," should be dismissed. (Compl. ¶ 69).

To the extent that plaintiff alleges that this claim is for common law negligence rather than a statutory wrongful death claim, "[p]laintiff's argument [would be] a word game." *Horwell*, 100 Or. App. at 575. Whether or not the remedy created by the wrongful death statute precludes all common law claims arising out of the death of a beneficiary's deceased, this action falls squarely within the statute. *Id.*

Plaintiff confirms that this is a wrongful death action on behalf of the estate by invoking the statutory language of ORS 30.020 in alleging "Plaintiff Estate has sustained the following injuries, economic, and non-economic damages," including "[a]n amount that would just fairly and

**Page 19 – DEFENDANT'S MOTION TO DISMISS**

KRAEMER, LOPEZ & LEWIS
Not a Partnership
Employees of CIS (Citycounty Insurance Services)
P.O. Box 1469
Lake Oswego, OR 97035
Telephone: (800) 922-2684
Facsimile: (503) 763-3900

reasonably have compensated the dece[de]nt for pain and suffering during the period between injury to the decedent and the decedent's death[.]" (Compl. ¶ 68). Any attempt to place a different label on it cannot alter the fact that it *is,* in substance, a wrongful death action. *Id.* Since this is a wrongful death claim, plaintiff cannot also bring a claim for damages separate from the damages available under ORS 30.020.

2.   Plaintiff Fails to State a Viable Wrongful Death Claim Based on Alleged Negligence or Negligent Training.

The claim also fails to state a viable wrongful death claim based on defendant's alleged negligence. Without admitting that SPD officers had probable cause to arrest decedent on November 6, 2015, January 6, 2016, or at any other time, for the same reasons discussed in Section IV.B.1, plaintiff cannot base her negligence claim on an alleged failure to arrest decedent under ORS 133.055.

Regarding any alleged negligence by defendant, plaintiff's claim fails for the separate and additional reason that, as a matter of law, defendant's alleged conduct did not create a foreseeable risk that failing to arrest plaintiff for alleged domestic violence would result in his subsequent suicide. In the absence of a foreseeable risk of harm, defendant cannot be found negligent. *Chapman v. Mayfield*, 358 Or. 196, 361 P.3d 566 (2015).

To prevail on a claim for common law negligence under Oregon law, plaintiff must prove either that there existed a status, a relationship, or a particular standard of conduct that creates, defines, or limits the defendant's duty, the breach of which is actionable, or that the defendant's conduct unreasonably created a foreseeable risk to a protected interest of the kind of harm that befell the plaintiff. *Fazzolari v. Portland School Dist. No. 1J,* 303 Or. 1, 17, 734 P.2d 1326 (1987).

Plaintiff's allegations that "[t]he death of Mr. Dunlap was caused [by] the wrongful acts or omissions or negligence of Defendant" invoke the second, "general foreseeability," standard, which requires that the plaintiff show (1) that defendant's conduct caused a foreseeable risk of harm; (2) that the risk is to an interest of a kind that the law protects against negligent invasion;

**Page 20 – DEFENDANT'S MOTION TO DISMISS**

KRAEMER, LOPEZ & LEWIS
Not a Partnership
Employees of CIS (Citycounty Insurance Services)
P.O. Box 1469
Lake Oswego, OR 97035
Telephone: (800) 922-2684
Facsimile: (503) 763-3900

(3) that defendant's conduct was unreasonable in light of the risk; (4) that the conduct was a cause of plaintiff's harm; and (5) that plaintiff was within the class of persons and plaintiff's injury was within the general type of potential incidents and injuries that made defendant's conduct negligent.  *Son v. Ashland Community Healthcare Services,* 239 Or. App. 495, 506, 244 P.3d 835 (2010).

In Oregon, a person is negligent if the person fails to exercise reasonable care, a standard that is measured by what a reasonable person of ordinary prudence would, or would not, do in the same or similar circumstances.  *Bjorndal v. Weitman,* 344 Or. 470, 478, 184 P.3d 1115 (2008).  A defendant is not liable for negligence if the defendant's conduct did not unreasonably create a foreseeable risk to a protected interest of the kind of harm that befell the plaintiff. *Dauven v. George Fox Univ.*, No. CV. 09-305-PK, 2010 WL 6089077, at *22 (D. Or. Dec. 3, 2010).  A foreseeable risk is one that could have been anticipated because there was a reasonable likelihood that it could happen.  *Chapman*, 358 Or. at 206.

In the context of a wrongful death claim based on alleged medical negligence, the Oregon Supreme Court in *Joshi v. Providence Health Sys. of Oregon Corp.*, 342 Or. 152, 157, 149 P.3d 1164 (2006) interpreted the phrase "when the death of a person is caused by the wrongful act or omission of another" in ORS 30.020, and determined what plaintiff must prove to establish liability.  In reviewing causation in Oregon law, which refers to causation in fact, the court noted that "where the causal connection between the negligent failure of a defendant and subsequent ailments of a plaintiff is left to mere speculation, a nonsuit is required."  *Id.* at 158.

ORS 30.020 requires that a plaintiff prove that a defendant's negligent act or omission *caused* the decedent's *death.  Id.* at 163.  Whether the plaintiff does so by showing a reasonable probability that a defendant's act led to decedent's death or by showing that defendant's act was a substantial factor in decedent's death, the plaintiff must demonstrate that defendant's negligent acts or omission was sufficient to bring about decedent's death.  *Id.* at 164.

**KRAEMER, LOPEZ & LEWIS**
**Not a Partnership**
**Employees of CIS (Citycounty Insurance Services)**
**P.O. Box 1469**
**Lake Oswego, OR 97035**
**Telephone: (800) 922-2684**
**Facsimile: (503) 763-3900**

Plaintiff cannot avoid this requirement by showing that defendant's negligent act or omission merely increased the risk of death. *Id.* Moreover, Oregon cases make clear that plaintiff cannot discharge her obligation by showing only a "substantial possibility" that defendant's actions caused decedent's death. *Id.*

This case alleges wrongful death resulting from simple negligence, not medical malpractice. However, this case is analogous to *Joshi* in that here, as there, plaintiff argues that the decedent would not have died had he received mental health treatment. However, plaintiff here has failed to allege that defendant through its police officers was required to provide a "mental health hold" for decedent. (Compl. ¶ 14).

Nor do the facts alleged show how the mental health treatment decedent might have received would have altered the ultimate outcome of his death. Accordingly, here the alleged causal connection between defendant's alleged negligent failure and decedent's subsequent suicide is too speculative to state a viable wrongful death claim.

To prove a negligent hiring, evaluation, supervision, or retention claim, plaintiff must show that SPD knew or reasonably should have known that the individual officers needed better training, evaluation, or supervision and SPD's failure to address such negligence was a contributing factor in causing decedent's injuries. *See Whelan v. Albertson's, Inc.*, 129 Or. App. 501, 507, 879 P.2d 888 (1994) (to sustain claim for negligent supervision under Oregon law, plaintiff must establish that the employer had knowledge of employee's dangerous propensities).

Again, only conclusory allegations devoid of specific facts give any indication that the incidents regarding decedent were the result of a program-wide inadequacy in training by SPD. In other words, the factual allegations are insufficient to show that SPD should have known of Hodges' or any other officer's alleged propensity not to "ensure equitable treatment of individuals with mental health disabilities" or that SPD's alleged failure to train and supervise its officers was a contributing factor to Dunlap's death.

**Page 22 – DEFENDANT'S MOTION TO DISMISS**

KRAEMER, LOPEZ & LEWIS
**Not a Partnership**
**Employees of CIS (Citycounty Insurance Services)**
**P.O. Box 1469**
**Lake Oswego, OR 97035**
**Telephone: (800) 922-2684**
**Facsimile: (503) 763-3900**

## IV.    CONCLUSION

The allegations in the complaint do not state colorable ADA, Rehabilitation Act, Section 1983, and wrongful death claims because, apart from legal conclusions, failing to arrest decedent for domestic violence had no legally actionable connection to his subsequent suicide.  There was no violation of decedent's constitutional rights and no failure to train either for *Monell* or negligence purposes.  For the foregoing reasons, all four of plaintiff's claims should be dismissed.

Respectfully submitted this 14th day of December, 2017.

KRAEMER, LOPEZ & LEWIS

By:    */s/ Steven A. Kraemer*
_____
Steven A. Kraemer, OSB No. 882476
David C. Lewis, OSB No. 953348
Of Attorneys for Defendants

**KRAEMER, LOPEZ & LEWIS**
**Not a Partnership**
**Employees of CIS (Citycounty Insurance Services)**
**P.O. Box 1469**
**Lake Oswego, OR 97035**
**Telephone: (800) 922-2684**
**Facsimile: (503) 763-3900**