**Steven A. Kraemer,** OSB No. 882476
E-mail:  skraemer@cisoregon.org
**David C. Lewis,** OSB No. 953348
E-mail:  dlewis@cisoregon.org
**KRAEMER & LEWIS**
P.O. Box 1469
Lake Oswego, OR 97035
Telephone: (800) 922-2684
Facsimile: (503) 763-3900

        Of Attorneys for Defendants

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| **KATHLEEN DUNLAP,** personal representative of the Estate of James Ross Dunlap, Jr., deceased**,** and **KATHLEEN DUNLAP**, individually, | No. 3:17-cv-01749-YY |
| Plaintiffs, | **DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT** |
| v. | |
| **CITY OF SANDY**, and **LUKE A. HODGES**, | **ORAL ARGUMENT REQUESTED** |
| Defendants. | |

**KRAEMER & LEWIS**
**Not a Partnership**
**Employees of CIS (Citycounty Insurance Services)**
**P.O. Box 1469**
**Lake Oswego, OR 97035**
**Telephone: (800) 922-2684**
**Facsimile: (503) 763-3900**

# TABLE OF CONTENTS

MOTION..............................................................................................................................1

PROCEDURAL HISTORY...............................................................................................1

LEGAL MEMORANDUM ................................................................................................2

I.     INTRODUCTION ................................................................................................ 2

II.    STANDARD OF REVIEW ................................................................................ 3

III.   LEGAL MEMORANDUM .................................................................................. 4

   A.   The ADA and RA Claims Fail as a Matter of Law............................................. 4

      1.   Kathleen Dunlap Lacks Standing to Bring Individual Claims Under

           42 U.S.C. § 12132 and Section 504 of the Rehabilitation Act  ............................... 5

      2.   If Mr. Dunlap Was Regarded as Disabled, the City Was Not Obligated to
           Provide Him with Reasonable Accommodations as a Matter of Law. ................... 8

      3.   Judge Hernandez' Order Did Not Give Plaintiff Leave to Include a
           Rehabilitation Act Claim in Her Amended Complaint ........................................... 9

      4.   To the Extent that the ADA and RA Envision Claims for Failure to Train,
           Plaintiff Fails to Allege Sufficient Facts to Establish Deliberate Indifference
           the City ................................................................................................................... 9

      5.   Failing to Provide "Services" to Someone Not in Defendants' Custody Who
           Subsequently Commits Suicide is Not a Recognized Claim Under 42 U.S.C
           § 12132 and Section 504 of the RA. ................................................................... 11

   B.   Plaintiff's Section 1983 Claim Against Defendant Hodges is Barred by the
       Applicable Statute of Limitations................................................................................. 17

   C.   Plaintiff's Section 1983 Procedural Due Process Claim Based on ORS 133.055
       Fails to State a Claim................................................................................................... 19

   D.   Individual Defendant Hodges is Entitled to Qualified Immunity Because His
       Allegedly Unlawful Actions Did Not Violate Any Clearly Established
       Constitutional Right ................................................................................................... 24

   E.   Plaintiff's Monell Claim Against the City Fails as a Matter of Law ........................... 25

      1.   The *Monell* Claim Based on a Failure to Train was Dismissed with Prejudice ..... 25

**KRAEMER & LEWIS**
**Not a Partnership**
**Employees of CIS (Citycounty Insurance Services)**
**P.O. Box 1469**
**Lake Oswego, OR 97035**
**Telephone: (800) 922-2684**
**Facsimile: (503) 763-3900**

2.    Failure to Train or Inadequate Policy *Monell* Claims Require Actual Or Constructive Notice to the City ............................................................................ 26

IV.    CONCLUSION ............................................................................................................. 27

**KRAEMER & LEWIS**
**Not a Partnership**
**Employees of CIS (Citycounty Insurance Services)**
**P.O. Box 1469**
**Lake Oswego, OR 97035**
**Telephone: (800) 922-2684**
**Facsimile: (503) 763-3900**

## TABLE OF AUTHORITIES

**Cases**

*Abagninin v. AMVAC Chem. Corp.,* 545 F.3d 733 (9th Cir. 2008) ............................................. 28

*Armstrong v. Wilson*, 124 F.3d 1019 (9th Cir. 1997) ................................................................. 5

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ..................................................................................... 3

*Associated Gen. Contractors of Amer. v. Metropolitan Water Dist. of S. Cal.*, 159 F.3d 1178 (9th Cir. 1998) .............................................................................................. 4

*Baaske v. City of Rolling Meadows*, 191 F. Supp. 2d 1009 (N.D. Ill. 2002) ............................... 5

*Bibeau v. Pacific Northwest Research Foundation*, 188 F.3d 1105 (9th Cir. 1999) ................... 17

*Board of Regents v. Roth*, 408 U.S. 564 (1972) ...................................................................... 22

*Bonneau v. Centennial Sch. Dist. No. 28J,* 666 F.3d 577 (9th Cir. 2012) ................................. 17

*Bresaz v. Cty. of Santa Clara*, 136 F. Supp. 3d 1125 (N.D. Cal. 2015) ..................................... 8

*Brewster v. Bd. of Educ. of Lynwood Unified Sch. Dist.*, 149 F.3d 971 (9th Cir. 1998) ............. 20

*Bryant v. Madigan*, 84 F.3d 246 (7th Cir. 1996) ................................................................... 13

*Buchanan v. Maine*, 469 F.3d 158 (1st Cir. 2006) .................................................................. 10

*Burella v. City of Philadelphia*, 501 F.3d 134 (3d Cir. 2007) ................................................. 21

*Butler v. Nat'l Cmty. Renaissance of California*, 766 F.3d 1191 (9th Cir. 2014) ...................... 18

*Cafasso, U.S. ex rel. v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047 (9th Cir. 2011) ................. 3

*Cetacean Community v. Bush*, 386 F.3d 1169 (9th Cir. 2004) .......................................... 5, 7, 8

*Cheek v. Nueces Cty. Tex.*, No. 2:13-CV-26, 2013 WL 4017132 (S.D. Tex. Aug. 5, 2013) ........ 14

*Christie v. Iopa*, 176 F.3d 1231 (9th Cir. 1999) ..................................................................... 26

*City & Cty. of San Francisco, Calif. v. Sheehan*, 135 S. Ct. 1765, 191 L. Ed. 2d 856 (2015) ..... 24

*City of Canton v. Harris,* 489 U.S. 378 (1989) ................................................................. 10, 27

*Connick v. Thompson*, 563 U.S. 51 (2011) ...................................................................... 26, 27

**KRAEMER & LEWIS**
**Not a Partnership**
**Employees of CIS (Citycounty Insurance Services)**
**P.O. Box 1469**
**Lake Oswego, OR 97035**
**Telephone: (800) 922-2684**
**Facsimile: (503) 763-3900**

*Deloney v. Cty. of Fresno*, No. 117CV01336LJOEPG, 2018 WL 3388921
  (E.D. Cal. July 11, 2018) ........................................................................ 26

*DeShaney v. Winnebago County Department of Social Services,* 489 U.S. 189 (1989) ........ 20, 22

*Dillary v. City of Sandusky,* 398 F.3d 562 (6th Cir. 2005) ........................................ 16

*Douglas v. Noelle,* 567 F.3d 1103 (9th Cir. 2009) ........................................................ 17

*Duvall v. Cnty. of Kitsap,* 260 F.3d 1124 (9th Cir. 2001) ........................................ 11

*Figueira ex rel. Castillo v. County of Sutter*, No. 2:15-CV-00500, 2015 WL 6449151
  (E.D. Cal. Oct. 23, 2015) ........................................................................ 27

*G.F.Co. v. Pan Ocean Shipping Co., Ltd.,* 23 F.3d 1498 (9th Cir. 1994) .................... 18

*Givens v. Cty. of Sacramento*, No. 215CV0720JAMKJNPS, 2016 WL 6599810
  (E.D. Cal. Nov. 7, 2016) ........................................................................ 11

*Glass v. Hillsboro Sch. Dist. 1J*, 142 F. Supp. 2d 1286 (D. Or. 2001) ...................... 6, 8

*Green v. Tri-County Metro. Transp. Dist.*, 909 F. Supp. 2d 1211 (D. Or. 2012) .......... 25

*Hainze v. Richards*, 207 F.3d 795 (5th Cir. 2000) ...................................................... 10

*Hare v. City of Corinth,* 74 F.3d 633 (5th Cir. 1996), *aff'd,* 133 F.3d 907 (2d Cir. 1997) .......... 13

*J.H. ex rel. J.P. v. Bernalillo County*, No. CIV 12-0128 JB/LAM, 2014 WL 3421037
  (D.N.M. July 8, 2014), ), *aff'd,* 806 F.3d 1255 (10th Cir. 2015) ............................ 10

*Kendall v. Visa U.S.A., Inc.*, 518 F.3d 1042 (9th Cir. 2008) ...................................... 27

*Long v. Ford Motor Co.*, No. CV07-2206-PHX-JAT, 2008 WL 2937751
  (D. Ariz. July 23, 2008) ........................................................................ 18

*Lujan v. Defenders of Wildlife,* 504 U.S. 555 (1992) .................................................... 5

*Micek v. City of Chicago,* No. 98 C 6757, 1999 WL 966970 (N.D. Ill. Oct. 4, 1999) .................. 7

*Moss v. U.S. Secret Service,* 572 F.3d 962 (9th Cir. 2009) ............................................ 3

*Mullenix v. Luna*, 136 S. Ct. 305, 193 L. Ed. 2d 255 (2015) ........................................ 25

*NeSmith v. Cty. of San Diego*, No. 15CV629, 2016 WL 4515857 (S.D. Cal. Jan. 27, 2016) ...... 27

*Olmstead v. L.C. ex rel. Zimring*, 527 U.S. 581 (1999) ................................................ 14

*Ove v. Gwinn,* 264 F.3d *817* (9th Cir. 2001) ............................................................ 23

**KRAEMER & LEWIS**
**Not a Partnership**
**Employees of CIS (Citycounty Insurance Services)**
**P.O. Box 1469**
**Lake Oswego, OR 97035**
**Telephone: (800) 922-2684**
**Facsimile: (503) 763-3900**

*Patten v. Leach*, No. 3:*15*-CV-0891-AC, 2016 WL 5928803 (D. Or. Oct. 11, 2016)............ 23, 24

*Pearson v. Callahan,* 555 U.S. 223 (2009)................................................................. 24

*RK Ventures, Inc. v. City of Seattle*, 307 F.3d 1045 (9th Cir. 2002)............................. 17

*Roberts v. City of Omaha*, 723 F.3d 966 (8th Cir. 2013)............................................. 10

*S.B. by & through Kristina B. v. California Dep't of Educ.*, 327 F. Supp. 3d 1218
   (E.D. Cal. *2018*)..................................................................................... 20

*Sacchetti v. Gallaudet Univ.*, 181 F. Supp. 3d 107 (D.D.C. 2016).............................. 10

*Sain v. City of Bend*, 309 F.3d 1134 (9th Cir. 2004)................................................. 17

*Sarnowski v. Peters*, No. 2:16-cv-00176-SU, 2016 WL 10705318 (D. Or. Sep. 8, 2016)........... 18

*Savage v. Glendale Union High Sch.,* 343 F.3d 1036 (9th Cir. 2003)............................ 5

*Shaymus v. Tulare Cty.*, No. 1:14-CV-01633-MCE, 2015 WL 3466942
   (E.D. Cal. June 1, 2015)........................................................................... 13

*Simenson v. Hoffman,* No. 95 C 1401, 1995 WL 631804 (N.D. Ill. Oct. 24, 1995)................. 7

*Simmons v. Navajo Cty., Ariz.*, 609 F.3d 1011 (9th Cir. 2010) ................................. 12

*Strong v. City of Eugene*, No. 6:14-cv-01709-AA, 2015 WL 2401395 (D. Or. May 19, 2015) .. 18

*Thao v. City of St. Paul*, No. CIV. 05-5306 PAM/RLE, 2006 WL 1004379
   (D. Minn. Apr. 13, 2006), *aff'd*, 481 F.3d 565 (8th Cir. 2007) ...........................14-16

*Town of Castle Rock, Colo. v. Gonzales*, 545 U.S. 748 (2005) ....................... 20, 22-24

*Trevino v. Gates,* 99 F.3d 911 (9th Cir. 1996)......................................................... 26

*Tsao v. Desert Place, Inc.,* 698 F.3d 1128 (9th Cir. 2012).................................... 26, 27

*Tyler v. City of Manhattan*, 118 F.3d 1400 (10th Cir. 1997)..................................... 16

*U.S. Dep't of Transp. v. Paralyzed Veterans of Am.*, 477 U.S. 597 (1986).................... 4

*Vinson v. Thomas*, 288 F.3d 1145 (9th Cir. 2002)...................................................... 4

*Wallace v. Kato*, 549 U.S. 384 (2007).................................................................... 17

*Waller v. City of Danville*, 515 F. Supp. 2d 659 (W.D. Va. 2007).............................. 10

**DEFENDANTS' MOTION TO DISMISS
PLAINTIFFS' FIRST AMENDED COMPLAINT**

**KRAEMER & LEWIS**
**Not a Partnership**
**Employees of CIS (Citycounty Insurance Services)**
**P.O. Box 1469**
**Lake Oswego, OR 97035**
**Telephone: (800) 922-2684**
**Facsimile: (503) 763-3900**

*Weinreich v. Los Angeles County Metro. Transp. Auth.*, 114 F.3d 976 (9th Cir. 1997)........... 4, 12

*White v. Pauly,* 137 S. Ct. 548, 196 L. Ed. 2d 463 (2017)............................................. 25

*Wilson v. Formigoni,* 42 F.3d 1060 (7th Cir. 1994) ................................................... 13

*Worthington v. Wilson,* 8 F.3d 1253 (7th Cir. 1993) .................................................. 19

*Zinermon v. Burch*, 494 U.S. 113 (1990)................................................................. 20

## Rules, Statutes and Regulations

Fed. R. Civ. P. 12(b)(1)................................................................................. 3, 5

Fed. R. Civ. P. 12(b)(6)................................................................................. 17

Fed. R. Civ. P. 15(c)(1)(C) ............................................................................ 18

29 U.S.C. § 794(a) ....................................................................................... 4

42 U.S.C. § 1983 ........................................................ 1, 2, 15, 17, 20, 24

42 U.S.C. § 12102(1) ...................................................................................... 8

42 U.S.C. § 12132 .................................................... 2, 4, 5, 10, 11, 12

42 U.S.C. § 12133 ......................................................................................... 5

42 U.S.C. § 12201(h) ..................................................................................... 8

34 C.F.R. § 104.4 .......................................................................................... 4

ORS 12.110(1) ............................................................................................ 17

ORS 133.055.............................................................. 2, 11, 13, 19, 23, 24

ORS 426.130............................................................................................... 14

ORS 426.228.......................................................................................... 12, 14

**KRAEMER & LEWIS
Not a Partnership
Employees of CIS (Citycounty Insurance Services)
P.O. Box 1469
Lake Oswego, OR 97035
Telephone: (800) 922-2684
Facsimile: (503) 763-3900**

## LOCAL RULE 7-1 CERTIFICATION

Pursuant to LR 7-1, the undersigned certifies that on November 7, 2018, defendants'
counsel conferred with plaintiffs' counsel, Dan Snyder, by telephone and email and discussed the
claims, defenses, and issues that are the subject of defendants' motion to dismiss.  The parties were
unable to resolve the subject matter of this motion and the Court's ruling is necessary on this matter.

## MOTION

Pursuant to Federal Rules of Civil Procedure 12(b)(1), 12(b)(6) and Local Rule 7-1(b),
defendants City of Sandy and Luke A. Hodges move this Court to dismiss plaintiffs' claims against
them for (1) lack of subject matter jurisdiction; and (2) failure to state a claim.  In support of this
motion, pursuant to LR 7-1(c), defendants rely upon the Legal Memorandum set forth below.

## PROCEDURAL HISTORY

The original Complaint in this matter was filed on November 1, 2017, alleging four claims
against the City only: (1) violation of the Americans with Disabilities Act (ADA) under 42 U.S.C.
§ 12132; (2) violation of Section 504 of the federal Rehabilitation Act (RA); (3) a substantive due
process claim based on alleged "unconstitutional policies and procedures for interacting with
mentally ill persons" and an alleged failure to train under 42 U.S.C. § 1983; and (4) a wrongful
death claim based on defendant's alleged negligence.  (Docket No. 1).  The City filed Rule 12
motions seeking dismissal of all four claims on December 14, 2017.  (Docket No. 10).

In her Findings and Recommendations (F&R) dated June 4, 2018, Magistrate Judge Youlee
Yim You recommended that "all claims should be dismissed with prejudice, except that plaintiffs
should be given leave to amend the complaint to allege a procedural due process claim."  (Docket
No. 24 – *Dunlap v. City of Sandy*, No. 3:17-CV-01749-YY, 2018 WL 4782263, at *20 (D. Or. June
4, 2018), *report and recommendation adopted as modified sub nom. Dunlap v. City of Sandy*, No.
3:17-CV-01749-YY, 2018 WL 4778042 (D. Or. Oct. 3, 2018).

After plaintiff filed objections to the F&R and the City filed a response, Judge Marco A.
Hernandez adopted Judge You's F&R, granting the City's motion, and limiting plaintiff's "leave to

**Page 1 –   DEFENDANTS' MOTION TO DISMISS
          PLAINTIFFS' FIRST AMENDED COMPLAINT**

KRAEMER & LEWIS
Not a Partnership
Employees of CIS (Citycounty Insurance Services)
P.O. Box 1469
Lake Oswego, OR 97035
Telephone: (800) 922-2684
Facsimile: (503) 763-3900

amend the Complaint to allege (1) what services, other than an arrest, Sandy Police denied Mr. Dunlap [in] violation of the ADA and (2) a procedural due process claim."  (Docket No. 31 – 10/3/18 Order).

Plaintiff filed her First Amended Complaint on October 24, 2018, which includes a new defendant, Officer Luke Hodges, and three federal claims: (1) violation of the Americans with Disabilities Act (ADA) under 42 U.S.C. § 12132; (2) violation of Section 504 of the federal Rehabilitation Act (RA); and (3) a procedural due process claim under 42 U.S.C. § 1983 based on defendants' alleged failure to arrest decedent Dunlap under ORS 133.055 that resulted in deprivation of plaintiff's constitutional right "to bodily integrity and security with the liberty interests created for Mrs. Dunlap's benefit and protection by state law[.]"  (Docket No. 32 – First Am. Compl. ¶ 54).  The ADA and RA claims are brought against the City, while the procedural due process claim is brought against individual defendant Hodges and the City.  (*Id.* at ¶¶ 30-31, 46-49, 51-61).

## LEGAL MEMORANDUM

## I.    INTRODUCTION

As the Court knows, this case is the result of a tragedy that, contrary to plaintiff's minor variations on the original claims, has no factual or legal relationship to whether or not the City's police department should have provided a variety of "services" to Mr. Dunlap under the ADA and arrested him under the Oregon domestic violence statute.  Regardless of how these claims are framed, they are dependent on the mistaken proposition that defendants are liable because of their alleged failure to prevent Mr. Dunlap's suicide nearly two days after his alleged encounter with Officer Hodges.

The Section 1983 procedural due process claim against Officer Hodges is barred by the applicable statute of limitations.  And there was no violation of either Mr. or Mrs. Dunlap's constitutional rights because ORS 133.055 does not create a procedural due process claim against Officer Hodges or the City, which is not required to protect citizens from each other or, in the case

**KRAEMER & LEWIS**
**Not a Partnership**
**Employees of CIS (Citycounty Insurance Services)**
**P.O. Box 1469**
**Lake Oswego, OR 97035**
**Telephone: (800) 922-2684**
**Facsimile: (503) 763-3900**

of decedent Dunlap, himself.  The procedural due process *Monell* claim against the City should be dismissed because plaintiff fails to allege facts demonstrating that there was a municipal policy, custom or practice to specifically deprive decedent of his constitutional right not to be discriminated against because of any alleged lack of training by the Sandy Police Department (SPD).

In sum, the few differences between the original and amended complaints reinforces the fact that plaintiff's federal claims are based on alleged actions that do not rise to the level of federal statutory or constitutional violations.  As set forth below, plaintiff's First Amended Complaint suffers from the same deficiencies with regard to the allegations against defendants as the original Complaint, which should result in the dismissal of plaintiff's three claims with prejudice.

## II.     STANDARD OF REVIEW

Defendants' motion is made pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6).  This Court is familiar with the post-*Iqbal* pleading standards that govern these motions.  A complaint must contain factual allegations that state a claim "that is plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  It is not sufficient that allegations "conceivably" could state a claim; the theory must, in fact, be "plausible."  *Id.* at 679.  In assessing "plausibility," the court must draw on its "judicial experience and common sense" and consider "obvious alternative explanation[s]."  *Cafasso, U.S. ex rel. v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1056 (9th Cir. 2011).

A "pleading that offers 'labels and conclusions' or a 'formulaic recitation of the elements of a cause of action will not do . . . . Nor does a complaint suffice if it tenders 'naked assertion[s] devoid of further factual enhancement."  *Iqbal*, 556 U.S. at 679.  For a complaint to survive a motion to dismiss, the non-conclusory factual content and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief.  *Moss v. U.S. Secret Service*, 572 F.3d 962, 969 (9th Cir. 2009).  This Court also must disregard legal conclusions that masquerade as factual allegations, which are "not entitled to the assumption of truth."  *Id.*; *Associated Gen. Contractors of Amer. v. Metropolitan Water Dist. of S. Cal.*, 159 F.3d 1178, 1181

**KRAEMER & LEWIS**
Not a Partnership
Employees of CIS (Citycounty Insurance Services)
P.O. Box 1469
Lake Oswego, OR 97035
Telephone: (800) 922-2684
Facsimile: (503) 763-3900

(9th Cir. 1998) (conclusory allegations of law and unwarranted inferences not sufficient to defeat motion to dismiss).

### III.   LEGAL MEMORANDUM

#### A.   The ADA and RA Claims Fail as a Matter of Law.

The 42 U.S.C. § 12132 claim on behalf of the estate and Kathleen Dunlap alleges that defendant City violated Title II of the ADA based on an alleged policy "not to get involved when officers were dealing with a mentally ill individual," "failing to provide services to Mr. Dunlap because of his disability, or referring Mrs. Dunlap to mental health resources," "failing to make reasonable modifications in their policies" regarding "accessibility for individuals with disabilities," and "failing to make reasonable modification of City normal practices to accommodate a person with a disability." (First Am. Compl. ¶ 38).

Without conceding that the City receives federal funding related to its police department, which is a requirement to bring a viable claim under Section 504 of the Rehabilitation Act,[1] the Section 504 claim repeats the allegation from the original complaint that "Defendant City's actions and omissions . . . violated Plaintiffs' rights under the Rehabilitation Act by excluding them or denying them the benefits of Defendant City's services solely because of Mr. Dunlap's disability." (First Am. Compl. ¶ 47).

The Ninth Circuit analyzes a Section 504 claim in the same manner as a Title II ADA claim, noting that there is "no significant difference in the analysis of rights and obligations created by the two acts." *Vinson v. Thomas*, 288 F.3d 1145, 1152 n.7 (9th Cir. 2002); *Weinreich v. Los Angeles County Metro. Transp. Auth.*, 114 F.3d 976, 978 (9th Cir. 1997) (Title II of the

---

[1] Section 504 of the Rehabilitation Act provides that "no otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 29 U.S.C. § 794(a); *see also* 34 C.F.R. § 104.4. Congress limited the scope of Section 504 to those who actually "receive" federal financial assistance because it sought to impose Section 504 coverage as a form of contractual cost of the recipient's agreement to accept the federal funds. *U.S. Dep't of Transp. v. Paralyzed Veterans of Am.*, 477 U.S. 597, 605 (1986).

**KRAEMER & LEWIS**
Not a Partnership
Employees of CIS (Citycounty Insurance Services)
P.O. Box 1469
Lake Oswego, OR 97035
Telephone: (800) 922-2684
Facsimile: (503) 763-3900

ADA was expressly modeled after Section 504 of the Rehabilitation Act); *Armstrong v. Wilson*, 124 F.3d 1019, 1023 (9th Cir. 1997) (noting Congress has directed that the ADA and RA be construed consistently).

       1.      <u>Kathleen Dunlap Lacks Standing to Bring Individual Claims Under 42 U.S.C. § 12132 and Section 504 of the Rehabilitation Act.</u>

The claims under 42 U.S.C. § 12132 and Section 504 of the RA are again brought by decedent's estate and plaintiff Kathleen Dunlap in her individual capacity, alleging that "[d]efendant City discriminated against Mrs. Dunlap because of her association with Mr. Dunlap, a person with a disability." (First Am. Compl. ¶¶ 30-50). Because Dunlap lacks standing to bring these claims in her individual capacity, the Court should dismiss her individual ADA and Rehabilitation Act claims for lack of subject matter jurisdiction.

A motion to dismiss under Fed. R. Civ. P. 12(b)(1) tests the subject matter jurisdiction of the court. *Savage v. Glendale Union High Sch.,* 343 F.3d 1036, 1039-40 (9th Cir. 2003). A federal court lacks subject matter jurisdiction over a suit brought by a plaintiff without standing. *Cetacean Community v. Bush,* 386 F.3d 1169, 1174 (9th Cir. 2004). In general, to establish constitutional standing, a plaintiff must demonstrate: (1) an injury-in-fact; (2) a causal connection between the injury and the conduct complained of; and (3) the redressability of the injury. *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560 (1992). If the court determines a suit lacks constitutional standing, it must dismiss the claim under Rule 12(b)(1). *Cetacean Community,* 386 F.3d at 1174.

According to Title II of the ADA, "[n]o qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by such entity." 42 U.S.C. § 12132. Title II allows "any person alleging discrimination on the basis of disability in violation of section 12132" to bring an action. 42 U.S.C. § 12133. Title II does not expressly allow a non-disabled individual to bring a discrimination claim against a municipality. *Baaske v. City of Rolling Meadows*, 191 F. Supp. 2d 1009, 1015-16 (N.D. Ill. 2002).

**KRAEMER & LEWIS**
**Not a Partnership**
**Employees of CIS (Citycounty Insurance Services)**
**P.O. Box 1469**
**Lake Oswego, OR 97035**
**Telephone: (800) 922-2684**
**Facsimile: (503) 763-3900**

This Court's holding in *Glass v. Hillsboro Sch. Dist. 1J*, 142 F. Supp. 2d 1286, 1287 (D. Or. 2001) is instructive.   In *Glass*, defendant moved to dismiss the individual claims of the plaintiff parents for failure to state a claim and for lack of subject matter jurisdiction, because these plaintiffs failed to allege that they suffered a separate, direct injury because of defendant's alleged discrimination.  *Id.*

The *Glass* plaintiffs' claims were "associational" discrimination claims, that is, they derived their individual right to sue solely through their association with their disabled children.  *Id.* at 1287-88.   Specifically, they alleged that they suffered injury caused by defendant's discrimination solely because of their association with their disabled children, in the form of financial loss, anxiety, humiliation, and severe emotional distress.  *Id.* at 1289.  The Court noted that to state a valid claim for associational discrimination under either the ADA or Rehabilitation Act, a plaintiff must allege some "specific, direct, and separate injury" as a result of association with a disabled individual.  *Id.* at 1288.

Analytically, the "specific, direct, and separate injury" requirement is a "prudential" standing consideration related to the general Article III constitutional standing requirement.  *Id.* at 1288.  Accepting that Congress intended to provide for associational discrimination claims, even where the Article III standing requirements are met, plaintiffs must also demonstrate that they themselves were harmed; that is, that they suffered a specific, separate, and direct injury to themselves caused by defendant's actions.  *Id.* at 1288.

The plaintiff parents in *Glass* argued that they were not merely applying for services for their disabled children.  *Id.* at 1291.  Instead, they wanted to actively attend and observe defendant's educational program.  *Id.*  The parents *themselves* were seeking to participate in defendant's services, but defendant denied them the opportunity to participate because of their association with disabled children.  *Id.*

However, the parents failed to allege that *they* wanted to observe the classroom, only that they wanted *their experts* to observe the classroom.  *Id.*  The parents' desire to have their experts

**KRAEMER & LEWIS**
**Not a Partnership**
**Employees of CIS (Citycounty Insurance Services)**
**P.O. Box 1469**
**Lake Oswego, OR 97035**
**Telephone: (800) 922-2684**
**Facsimile: (503) 763-3900**

observe the classroom was not the same as alleging any separate and distinct denial of services to them, apart from their role as parents of children enrolled or proposed to be enrolled in defendant's programs. *Id.* at 1292. Instead, the plaintiff parents' allegations, reasonably construed in the light most favorable to them, showed that their attempt to gain access for their experts to the special education classroom related solely to their children's education, and was not an attempt to exercise some independent and separate right to have access to the classroom for their own benefit. *Id.*

In other words, the parents did not have some personal right—separate from and independent of their children's placement in defendant's school—to have their experts observe defendant's classrooms. *Id.* at 1291-92. Consequently, the court concluded that the plaintiff parents did not have a valid associational discrimination claim. *Id.* at 1292. *See also Simenson v. Hoffman,* No. 95 C 1401, 1995 WL 631804, at *2, 5-6 (N.D. Ill. Oct. 24, 1995) (holding that plaintiff, the father of a disabled child, did not suffer a separate injury when a doctor refused to treat the disabled child and asked the family to leave the care center); *Micek v. City of Chicago,* No. 98 C 6757, 1999 WL 966970, at *3-4 (N.D. Ill. Oct. 4, 1999) (dismissing plaintiff's complaint that he had standing to bring a suit under the ADA on the basis of his association with his son, a qualified individual with a disability, where the plaintiff did not suffer an ADA injury).

Here, Mrs. Dunlap's allegations fail to establish any of the three required elements of constitutional standing. Not referring Mrs. Dunlap to mental health resources is insufficient to establish that she suffered an injury-in-fact that was concrete, particularized, and actual. *Cetacean Community*, 386 F.3d at 1174. In other words, it was not plaintiff Dunlap who was allegedly denied any services. It was her husband, the allegedly disabled person, who was allegedly denied services because he was not placed in a "psychiatric hold" or taken to a hospital. (First Am. Compl. ¶¶ 17, 38).

Nor do the allegations show the alleged injury was fairly traceable to the challenged action of the City, since plaintiff does not allege that at any time the City prevented her from seeking mental health services herself for Mr. Dunlap. *Id.*; (First Am. Compl. ¶¶ 1-61). And since Mr.

KRAEMER & LEWIS
Not a Partnership
Employees of CIS (Citycounty Insurance Services)
P.O. Box 1469
Lake Oswego, OR 97035
Telephone: (800) 922-2684
Facsimile: (503) 763-3900

Dunlap's suicide presumably ended the need for mental health services, the alleged injury will not be redressed by a favorable decision. *Cetacean Community*, 386 F.3d at 1174.

Like the case in *Glass*, plaintiff fails to satisfy the prudential standing considerations of "specific," "separate" and "direct" injury because of the City's alleged discrimination. Instead, plaintiff's alleged injuries are directly related to the alleged "discrimination" against her husband because of his alleged disability: "In failing to provide services to Mr. Dunlap because of his disability, or referring Mrs. Dunlap to mental health resources[.]"; "Defendant City's actions and omissions as described above violated Plaintiffs' rights under the Rehabilitation Act by excluding them or denying them the benefits of Defendant City's services solely because of Mr. Dunlap's disability." (First Am. Compl. ¶ 38(b)). Consequently, plaintiff's alleged injury here is a derivative-type injury, which is not actionable, so plaintiff's individual associational discrimination claims under the ADA and RA fail as a matter of law. *Glass*, 142 F. Supp. 2d at 1290.

2.    If Mr. Dunlap Was Regarded as Disabled, the City Was Not Obligated to Provide Him with Reasonable Accommodations as a Matter of Law.

Without admitting that decedent Dunlap was a qualified individual with a disability for ADA purposes, to the extent the estate realleges that decedent Dunlap was *regarded as* being disabled during his limited encounters with SPD, the City was not obligated to provide the decedent reasonable accommodations as a matter of law. (First Am. Compl. ¶ 33); *Bresaz v. Cty. of Santa Clara*, 136 F. Supp. 3d 1125, 1133 (N.D. Cal. 2015). The ADA defines "disability" as: (A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment. 42 U.S.C. § 12102(1).

Under 42 U.S.C. § 12201(h), "a public entity under subchapter II . . . need not provide a reasonable accommodation or a reasonable modification to policies, practices, or procedures to an individual who meets the definition of disability in section 12102(1) of this title solely under subparagraph (C) of such section." *Bresaz*, 136 F. Supp. 3d at 1133. Thus, pursuant to these

Page 8 –    **DEFENDANTS' MOTION TO DISMISS**
            **PLAINTIFFS' FIRST AMENDED COMPLAINT**

KRAEMER & LEWIS
Not a Partnership
Employees of CIS (Citycounty Insurance Services)
P.O. Box 1469
Lake Oswego, OR 97035
Telephone: (800) 922-2684
Facsimile: (503) 763-3900

statutory provisions, the City was not obligated to reasonably accommodate Mr. Dunlap to the extent he was allegedly regarded as having suffered from a disability. *Id.*

        3.    <u>Judge Hernandez' Order Did Not Give Plaintiff Leave to Include a Rehabilitation Act Claim in Her Amended Complaint</u>.

Plaintiff's RA claim should be dismissed with prejudice on procedural grounds because, in adopting Judge You's F&R that recommended dismissing the RA claim with prejudice, Judge Hernandez did not grant plaintiff the right to amend the RA claim: "Plaintiffs may amend the Complaint to allege what services, other than an arrest, Sandy Police denied Mr. Dunlap in violation of the Americans with Disabilities Act (ADA)." (10/3/18 Order, p. 2). Judge Hernandez repeated this directive in his Conclusion, granting plaintiff "leave to amend the Complaint to allege (1) what services, other than an arrest, Sandy Police denied Mr. Dunlap [in] violation of the ADA[.]" (*Id.*). The Order did not mention the RA claim. (*Id.* at p. 1-2).

In her Objections to Judge You's F&R, plaintiff failed to object to the dismissal of her RA claim or even to mention the RA claim. (Docket No. 26 – Pl.'s Objections to F&R, p. 1-8). For these reasons, the RA claim should be dismissed with prejudice. To the extent the Court does not dismiss plaintiff's RA claim on procedural grounds, it fails for the same reasons the amended ADA claim fails as set forth below.

        4.    <u>To the Extent that the ADA and RA Envision Claims for Failure to Train, Plaintiff Fails to Allege Sufficient Facts to Establish Deliberate Indifference by the City</u>.

To the extent that plaintiff realleges her failure-to-train claim as a basis for the ADA and RA claims, it should be dismissed with prejudice on procedural grounds because in adopting the F&R, Judge Hernandez dismissed plaintiff's failure-to-train claim with prejudice. *Dunlap*, 2018 WL 4782263, at *6; (10/3/18 Order, p. 1-2). The amended complaint repeats verbatim the same allegations from the original complaint regarding the City's alleged failure to train. (Compl. ¶¶ 36, 44; First Am. Compl. ¶¶ 35, 43). To the extent the Court does not dismiss plaintiff's failure-to-train ADA and RA claims on procedural grounds, the claims still fail for the same reasons discussed in the City's original motion to dismiss.

**KRAEMER & LEWIS**
**Not a Partnership**
**Employees of CIS (Citycounty Insurance Services)**
**P.O. Box 1469**
**Lake Oswego, OR 97035**
**Telephone: (800) 922-2684**
**Facsimile: (503) 763-3900**

In *Sacchetti v. Gallaudet Univ.*, 181 F. Supp. 3d 107, 130 (D.D.C. 2016), plaintiffs alleged that defendant "fail[ed] to properly train its officers and personnel for encounters with disabled persons" and "fail[ed] to modify or implement its police policies, procedures[,] and training" resulting in discrimination against plaintiffs.  The court noted that its Circuit had not addressed whether Title II of the ADA envisions failure-to-train claims such as the plaintiff's. *Id.*  However, several district courts in outside jurisdictions had either declined to recognize the existence of such a claim or avoided addressing the question.  *Id.*

For example, in *Buchanan v. Maine*, 469 F.3d 158, 177 (1st Cir. 2006), plaintiff contended that the policies put in place by the County and the training received by police officers was deficient. In particular, plaintiff took issue with the lack of procedures and training to assist officers in successfully communicating with mentally ill individuals.  *Id.*  The First Circuit held that an argument that police training, which was provided, was insufficient did not present a viable claim that plaintiff was "denied the benefits of the services . . . of a public entity" by reason of his mental illness, as required under 42 U.S.C. § 12132.  *See also Hainze v. Richards*, 207 F.3d 795, 801 (5th Cir. 2000); *Waller v. City of Danville*, 515 F. Supp. 2d 659, 666 (W.D. Va. 2007) (finding no cause of action for failure to train under the ADA within the plain language of the statute), *aff'd*, 556 F.3d 171, 177 n.3 (4th Cir. 2009) (declining to explicitly recognize a cause of action under the ADA for failure to train).

Courts that have permitted a cause of action for failure to train under the ADA require the plaintiff to demonstrate deliberate indifference. *See Roberts v. City of Omaha*, 723 F.3d 966, 976 (8th Cir. 2013); *J.H. ex rel. J.P. v. Bernalillo County*, No. CIV 12-0128 JB/LAM, 2014 WL 3421037, at *25 (D.N.M. July 8, 2014), ), *aff'd*, 806 F.3d 1255 (10th Cir. 2015).  Here, should this Court choose to permit a cause of action under the ADA for failure to train, the deliberate indifference standard should apply, as it does in a Section 1983 failure-to-train claim.  *City of Canton v. Harris,* 489 U.S. 378, 388 (1989) (local governmental entity's failure to train its

Page 10 – **DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT**

KRAEMER & LEWIS
Not a Partnership
Employees of CIS (Citycounty Insurance Services)
P.O. Box 1469
Lake Oswego, OR 97035
Telephone: (800) 922-2684
Facsimile: (503) 763-3900

employees can create Section 1983 liability only where failure to train amounts to deliberate indifference to the rights of persons with whom those employees are likely to come into contact).

However, like the original complaint, plaintiff's amended complaint contains no more than vague and conclusory allegations regarding alleged failure to train SPD officers. *See, e.g., Givens v. Cty. of Sacramento*, No. 215CV0720JAMKJNPS, 2016 WL 6599810, at *5-6 (E.D. Cal. Nov. 7, 2016). Plaintiff alleges no specific facts regarding obvious deficiencies in SPD training and supervision of its officers. (First Am. Compl. ¶¶ 35, 58). Because plaintiff has not pled facts, as opposed to conclusory allegations, to support the claim that the City was deliberately indifferent, plaintiff's failure to train basis for the ADA and Section 504 claims should be dismissed with prejudice. (First Am. Compl. ¶¶ 48, 58).

     5.    <u>Failing to Provide "Services" to Someone Not in Defendants' Custody Who Subsequently Commits Suicide is Not a Recognized Claim Under 42 U.S.C. § 12132 and Section 504 of the RA</u>.

As a threshold matter, the amended ADA claim on behalf of the estate and Kathleen Dunlap repeats the allegation that "Defendant City refused to follow Or. Rev. Stat. § 133.055(2), which mandated that they arrest Mr. Dunlap for domestic violence, because he had a mental disorder." (Compl. ¶ 38; First Am. Compl. ¶ 37). To the extent this allegation remains, at least in part, the basis of the ADA and RA claims, the claims fail because the Court dismissed the "failure to arrest" claims with prejudice. *Dunlap*, 2018 WL 4782263, at *4-6, 10; (10/3/18 Order, p. 1-2).

Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. To recover monetary damages under Title II a plaintiff must prove intentional discrimination on the part of the defendant. *Duvall v. Cnty. of Kitsap*, 260 F.3d 1124, 1138 (9th Cir. 2001). In *Duvall*, the Ninth Circuit held that deliberate indifference is the appropriate standard to use in determining whether intentional discrimination occurred. *Id.* Deliberate indifference requires both knowledge that a harm to a federally protected right is substantially likely, and a failure to act

**KRAEMER & LEWIS**
Not a Partnership
**Employees of CIS (Citycounty Insurance Services)**
P.O. Box 1469
Lake Oswego, OR 97035
Telephone: (800) 922-2684
Facsimile: (503) 763-3900

upon that likelihood. *Id.* at 1139. A failure to act must be the result of conduct that is more than negligent and involves an element of deliberateness. *Id.*

To prove that a public program or service violates Title II of the ADA, a plaintiff must show: (1) he is a qualified individual with a disability; (2) he was either excluded from participation in or denied the benefits of a public entity's services, programs, or activities, or was otherwise discriminated against by the public entity; and (3) such exclusion, denial of benefits or discrimination was by reason of his disability. 42 U.S.C. § 12132; *Weinreich*, 114 F.3d at 978.

In support of the ADA claim, plaintiff's amended complaint repeats most of the allegations from the original complaint. The difference this time is plaintiff's allegation that defendants violated 42 U.S.C. § 12132 by "failing to provide services to Mr. Dunlap because of his disability, or referring Mrs. Dunlap to mental health resources[.]" (First Am. Compl. ¶ 38(b)). The alleged "services" include the following:

- placing "a mental health hold on Mr. Dunlap pursuant to" ORS 426.228;
- "notifying Mrs. Dunlap of the involuntary commitment services of Clackamas County";
- "Taking Mr. Dunlap to a hospital";
- "Calling an ambulance for Mr. Dunlap";
- "Arranging for and coordinating with emergency services including public mental health services" in Clackamas County or "advising Mrs. Dunlap to do so";
- "failing to call the Clackamas County Mental Health crisis line and arranging for intervention by the Clackamas County Crisis Team or advising Mrs. Dunlap to do so";
- "failing to take Mr. Dunlap to the Clackamas County Mental Health crisis facility . . . or advising Mrs. Dunlap to request services for her husband."

(First Am. Compl. ¶ 38(b)).

Like the failure to arrest claim, this version of plaintiff's ADA claim also fails because the claim is not actionable under the ADA. *Simmons v. Navajo Cty., Ariz.*, 609 F.3d 1011, 1021-22 (9th Cir. 2010) (affirming grant of summary judgment on ADA claim where plaintiffs argued county

KRAEMER & LEWIS
Not a Partnership
Employees of CIS (Citycounty Insurance Services)
P.O. Box 1469
Lake Oswego, OR 97035
Telephone: (800) 922-2684
Facsimile: (503) 763-3900

violated ADA by depriving suicide victim Simmons of "programs or activit[ies] to lessen his depression" including denying him access to outdoor recreation and failing to place Simmons in a more appropriate detention facility). The ADA prohibits discrimination because of disability, not inadequate treatment for disability. *Id.*; *Bryant v. Madigan,* 84 F.3d 246, 249 (7th Cir. 1996) (Act would not be violated by prison simply failing to attend to the medical needs of its disabled prisoners because ADA does not create a remedy for medical malpractice).

Similarly, in *Shaymus v. Tulare Cty.*, No. 1:14-CV-01633-MCE, 2015 WL 3466942, at *9 (E.D. Cal. June 1, 2015), because plaintiffs could not show that suicide victim Shaymus was denied services due to his disability but rather claimed that he received inadequate services to treat his disability, the ADA/RA Title II claim was dismissed. In other words, while Shaymus was allegedly a qualified individual with a disability, the fact that defendants may have failed "to provide competent and appropriate mental-health care" as alleged by plaintiffs was insufficient to state a claim under the ADA. *Id.* at *7.

As noted above, plaintiff continues to base the ADA claim on the allegation that "[d]efendant City refused to follow Or. Rev. Stat. § 133.055(2), which mandated that they arrest Mr. Dunlap for domestic violence, because he had a mental disorder." (First Am. Compl. ¶ 37). At the same time, plaintiff now alleges that SPD should *not* have arrested Dunlap. Instead, it should have implemented a variety of mental health "services," some of which were not SPD "services" at all but would have been the responsibility of Clackamas County. (*Id.* at ¶ 38(b)(ii) and (v)).

While persons who are in state custody have a right to some level of care and protection, including protection against suicide, *see Hare v. City of Corinth,* 74 F.3d 633, 647 n.3 (5th Cir. 1996), *aff'd,* 133 F.3d 907 (2d Cir. 1997), the Constitution does not impose upon a city a duty to hold a suicidal individual for the sole purpose of providing him medical care, as plaintiff seems to suggest. *Wilson v. Formigoni,* 42 F.3d 1060, 1066 (7th Cir. 1994) ("[T]here is no constitutional right to be deprived of liberty—there is no right to be imprisoned, and none to be involuntarily committed in a mental health facility."). In discussing the failure-to-arrest claim, this Court agreed,

**Page 13 – DEFENDANTS' MOTION TO DISMISS**
**PLAINTIFFS' FIRST AMENDED COMPLAINT**

KRAEMER & LEWIS
Not a Partnership
Employees of CIS (Citycounty Insurance Services)
P.O. Box 1469
Lake Oswego, OR 97035
Telephone: (800) 922-2684
Facsimile: (503) 763-3900

noting that such a view "does not comport with the purpose of the ADA, which is to give respect, dignity, and independence to those with disabilities, not deprive them of their liberty because they are suffering from a mental health crisis." *Dunlap,* 2018 WL 4782263, at *6.

And consistent with the Court's prior observation, plaintiff has again failed to allege how Officer Hodges knew that by not offering mental health services to Mr. Dunlap on the evening of January 9, 2016, he would kill himself almost two days later.  Nowhere in the amended complaint does plaintiff allege that Mrs. Dunlap ever told Hodges or anyone else connected to SPD that her husband had ever attempted suicide, let alone let that he had recently made such an attempt.  (First Am. Compl. ¶¶ 1-61).

Plaintiff's reliance on ORS 426.228(1), which provides in pertinent part that "[a] peace officer may take into custody a person who the officer has probable cause to believe is dangerous to self or to any other person and is in need of immediate care, custody or treatment for mental illness," is similarly misplaced.  As the Court previously noted, ORS 426.228's companion statute, ORS 426.130, Oregon's civil commitment statute, provides for involuntary commitment under certain circumstances, but that statute "does not provide a cause of action under the ADA." *Dunlap*, 2018 WL 4782263, at *6.  Likewise, the Supreme Court stated on *Olmstead v. L.C. ex rel. Zimring*, 527 U.S. 581, 603 n.14 (1999) that the ADA does not require States to "provide a certain level of benefits to individuals with disabilities." *See, e.g., Cheek v. Nueces Cty. Tex.*, No. 2:13-CV-26, 2013 WL 4017132, at *18 (S.D. Tex. Aug. 5, 2013) (ADA does not compel County to provide any particular treatment as a matter of preventing discrimination).

If this Court did not find that Officer Hodges acted with deliberate indifference in not arresting Mr. Dunlap, it should also find that he did not act with deliberate indifference by failing to place Mr. Dunlap in a "mental health hold," forcing him to go to a hospital against his will, or providing any other alleged "benefits" to him.

While decided on a motion for summary judgment, *Thao v. City of St. Paul*, No. CIV. 05-5306 PAM/RLE, 2006 WL 1004379, at *1 (D. Minn. Apr. 13, 2006), *aff'd*, 481 F.3d 565 (8th Cir.

**Page 14 – DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT**

KRAEMER & LEWIS
Not a Partnership
Employees of CIS (Citycounty Insurance Services)
P.O. Box 1469
Lake Oswego, OR 97035
Telephone: (800) 922-2684
Facsimile: (503) 763-3900

2007) is instructive.  In *Thao*, a mentally ill man (Yang) was shot and killed at his home by a St. Paul police officer.  Plaintiffs, Yang's family members, asserted various claims under 42 U.S.C. § 1983 and disability discrimination claims under the ADA and RA.  *Id.*

Yang's family called 911 to report that Yang had barricaded himself inside his home and locked out family members, refusing repeated entreaties to allow them inside.  *Id.* at *2. The family stated that it would be helpful for Yang to have a psychiatric evaluation and requested assistance to transport Yang to a hospital.  *Id.*  The dispatcher sent an ambulance to the residence and contacted the St. Paul Police Department to request assistance with an emotionally disturbed person.  *Id.*

Police officers arrived and several family members attempted unsuccessfully to communicate with Yang, who was sitting inside one of the second floor windows.  *Id.*  Based on their observations, the officers concluded that Yang was not an imminent threat to himself or others.  *Id.*  The officers therefore determined that they had no basis to forcibly enter the home to immediately detain Yang.  *Id.*  The officers also informed the medics that they could leave.  *Id.*

The officers treated the matter as a domestic situation in which parties were excluded from the home by a person whom the officers were told committed domestic assault in the past.  *Id.*  The officers advised the family that the officers could not enter the home or seize Yang, but that the family could forcibly enter the house.  *Id.*

The family members gained access to the house, accompanied by Officer Tharalson.  *Id.* at *3.  Once inside, Yang's wife asked Officer Tharalson to take her husband but he refused, explaining that Yang had threatened no one.  *Id.*  Yang soon appeared with a BB gun in one hand and a garden sickle in the other, raised above his head.  *Id.*  Yang told everyone to get out of the house.  *Id.*  Tharalson ordered Yang to drop his gun, Yang refused, and approached Tharalson.  *Id.*  Tharalson attempted to retreat, but Yang continued to follow.  *Id.*  When Yang was less than fifteen feet away, Officer Tharalson repeatedly and fatally shot him.  *Id.*

In arguing that defendants denied Yang the benefit of a public service by inadequately training their police officers, plaintiffs contended that the officers failed to reasonably accommodate

**KRAEMER & LEWIS**
Not a Partnership
**Employees of CIS (Citycounty Insurance Services)**
P.O. Box 1469
Lake Oswego, OR 97035
Telephone: (800) 922-2684
Facsimile: (503) 763-3900

Yang by mishandling their response to the family's 911 call. *Id.* at *7. Specifically, they contended that the officers should not have encouraged the family to break into the home. *Id.* Rather, the officers should have secured mental health services or otherwise contacted a mental health provider. *Id.* Plaintiffs also contended that the officers should have instructed the ambulance to remain on the scene. *Id.* Plaintiffs argued that the inadequacy of ADA training led to these failures to accommodate Yang. *Id.*

Plaintiffs also argued that the ADA imposed an affirmative burden on the municipal defendant to train its officers on reasonably accommodating mentally ill individuals. *Id.* The court disagreed, noting that a failure to train does not equate to a failure to reasonably accommodate. *Id.* at *8. Moreover, the failure of the municipal defendant to train its police officers about the ADA affected all disabled persons, not just Yang. *Id.* Thus, plaintiffs could not demonstrate that the municipal defendant intentionally discriminated against Yang specifically by failing to train. *Id.* Acts and omissions that have a disparate impact on disabled individuals in general are not specific acts of intentional discrimination against a particular person. *Dillary v. City of Sandusky,* 398 F.3d 562, 568 (6th Cir. 2005); *Tyler v. City of Manhattan,* 118 F.3d 1400, 1403 (10th Cir. 1997). Accordingly, the *Thao* court concluded that a failure to train claim for the denial of benefits was not cognizable under the disability discrimination statutes. *Thao*, 2006 WL 1004379, at *8.

Here, in both the original and amended complaints, plaintiff has consistently alleged that the "Sandy Police Department had a policy of not intervening when it encountered a person with a mental health crisis," "it was the policy of the Sandy Police Department not to get involved when dealing with mentally ill individuals," and "Defendant City had a policy and practice of not assisting individuals with mental health disabilities." (Compl. ¶¶ 14, 18, 28, 35, 53; First Am. Compl. ¶¶ 13, 17, 27, 34, 58.) As in *Thao*, here plaintiff cannot demonstrate that the City intentionally discriminated against Mr. Dunlap specifically rather than all "mentally ill individuals." The ADA and RA claims fail as a matter of law and should be dismissed with prejudice because any further amendments would be futile.

**KRAEMER & LEWIS**
Not a Partnership
**Employees of CIS (Citycounty Insurance Services)**
P.O. Box 1469
Lake Oswego, OR 97035
Telephone: (800) 922-2684
Facsimile: (503) 763-3900

**B.     Plaintiff's Section 1983 Claim Against Defendant Hodges is Barred by the Applicable Statute of Limitations.**

Pursuant to Fed. R. Civ. P. 12(b)(6), defendants move to dismiss plaintiff's third claim brought under 42 U.S.C. § 1983 against defendant Hodges because the claim is barred by the applicable statute of limitations.

A motion to dismiss a claim as time-barred by the statute of limitations is appropriately raised under Fed. R. Civ. P. 12(b)(6). *Sain v. City of Bend*, 309 F.3d 1134, 1139-40 (9th Cir. 2004). State law governs the statute of limitations period for Section 1983 suits. *Douglas v. Noelle,* 567 F.3d 1103, 1109 (9th Cir. 2009). Section 1983 claims are characterized as personal injury suits for statute of limitations purposes. *Id.* The applicable statute of limitations under Oregon law is two years. *See* ORS 12.110(1); *see also Bonneau v. Centennial Sch. Dist. No. 28J,* 666 F.3d 577, 580 (9th Cir. 2012) (applying Oregon's residual two-year statute of limitations for personal injury actions to a § 1983 action).

The accrual of a Section 1983 cause of action is a question of federal law that is not resolved by reference to state law. *Wallace v. Kato*, 549 U.S. 384, 388 (2007). A Section 1983 claim accrues, and the statute of limitations begins to run, when the plaintiff knows, or should know, of the injury that is the basis for his claims. *RK Ventures, Inc. v. City of Seattle*, 307 F.3d 1045, 1058 (9th Cir. 2002). Thus, the limitations period begins to run once a plaintiff has knowledge of the "critical facts" of the injury, including "that he has been hurt and who has inflicted the injury." *Bibeau v. Pacific Northwest Research Foundation*, 188 F.3d 1105, 1108 (9th Cir. 1999).

Here, the statute of limitations began to run when Mr. Dunlap committed suicide on January 11, 2016. (First Am. Compl. ¶ 29). Accordingly, the statute of limitations on plaintiff's procedural due process claim against Officer Hodges expired on January 11, 2018, over nine months ago. The amendment adding Hodges as a named defendant is futile unless it relates back to the original filing of the complaint on November 1, 2017.

**KRAEMER & LEWIS**
**Not a Partnership**
**Employees of CIS (Citycounty Insurance Services)**
**P.O. Box 1469**
**Lake Oswego, OR 97035**
**Telephone: (800) 922-2684**
**Facsimile: (503) 763-3900**

For an amendment that changes the party or the name of a party, Fed. R. Civ. P. 15(c)(1)(C) governs when the amendment relates back to the date of the original pleading. The elements necessary for relation back are: (1) the claim must have arisen out of the same conduct set forth in the original pleading; (2) the party to be brought in must have received notice within 90 days of the original complaint such that he will not be prejudiced in maintaining his defense; and (3) within those 90 days, that party must or should have known that, but for a mistake concerning identity, the action would have been brought against him. *Butler v. Nat'l Cmty. Renaissance of California*, 766 F.3d 1191, 1202-03 (9th Cir. 2014); *Sarnowski v. Peters*, No. 2:16-cv-00176-SU, 2016 WL 10705318, at *3 (D. Or. Sep. 8, 2016).

Element one is met by plaintiff's broad allegations against Officer Hodges in the original complaint. (11/1/17 Compl. ¶¶ 13, 14, 15, 18, 20, 21, 22, 24, 25, 26, 27, 28, 65). Element two requires notice to the proposed defendant within 90 days of the filing of the original complaint. However, it is plaintiff's burden to establish that Officer Hodges had notice of the lawsuit within 90 days of filing. *Strong v. City of Eugene*, No. 6:14-cv-01709-AA, 2015 WL 2401395, at *3 (D. Or. May 19, 2015). Plaintiff's amended complaint contains no allegations that Officer Hodges had any notice of the lawsuit within 90 days. (First Am. Compl. ¶¶ 1-61). Plaintiff fails to establish element two of the relation back rule.

Element three requires a mistake for the relation back rule to apply. Fed. R. Civ. P. 15(c)(1)(C)(ii). Rule 15(c)(1)(C) is not meant to assist a plaintiff who ignores or fails to take reasonable notice of the existence of a potential party. *See G.F.Co. v. Pan Ocean Shipping Co., Ltd.*, 23 F.3d 1498, 1503 (9th Cir. 1994).

The majority view among the circuits permits amendment with relation back "in order to correct a misnomer of a defendant where the proper defendant is already before the court and the effect is merely to correct the name under which he is sued. *Long v. Ford Motor Co.*, No. CV07-2206-PHX-JAT, 2008 WL 2937751, at *5 (D. Ariz. July 23, 2008). But a new defendant cannot

**KRAEMER & LEWIS**
**Not a Partnership**
**Employees of CIS (Citycounty Insurance Services)**
P.O. Box 1469
Lake Oswego, OR 97035
Telephone: (800) 922-2684
Facsimile: (503) 763-3900

normally be substituted or added by amendment after the statute of limitations has run. *Id.* (citing *Worthington v. Wilson,* 8 F.3d 1253, 1256 (7th Cir. 1993)).

Here, as the original complaint confirms by its numerous allegations against him, from the outset of this action plaintiff and her counsel knew the critical facts indicating that Officer Hodges was a potential defendant who allegedly inflicted her injury. (Compl. ¶¶ 13, 14, 15, 18, 20, 21, 22, 24, 25, 26, 27, 28, 65). For example, the original complaint included the following direct allegation against Hodges: "The death of Mr. Dunlap was caused [by] the wrongful acts or omissions or negligence of Defendant, acting through its officers, including Officer Luke Hodges." (*Id.* at ¶ 65). Those alleged "wrongful acts or omissions" referenced throughout the original complaint were just as relevant to plaintiff's original Section 1983 substantive due process claim, which nevertheless failed to name Officer Hodges as a defendant.

Instead, plaintiff waited until nearly one year after filing this action and over nine months after the statute of limitations expired to file her First Amended Complaint naming Officer Hodges as a defendant to the new procedural due process claim, which contains numerous verbatim allegations against Hodges taken from the original complaint. Consequently, there was no mistake under Rule 15(c) and the amended complaint does not relate back to the date of the original complaint. The procedural due process claim against Officer Hodges in his individual capacity is barred by the statute of limitations and should be dismissed with prejudice.

C.     **Plaintiff's Section 1983 Procedural Due Process Claim Based on ORS 133.055 Fails to State a Claim.**

Plaintiff's reliance on ORS 133.055 as the basis of the new procedural due process claim fails for similar reasons as the negligence/wrongful death claim failed in the original complaint. (First Am. Compl. ¶¶ 51-56). As the Court noted the first time around, "Mr. Dunlap is not within the class of people the legislature intended to protect by enacting Oregon's mandatory arrest statute." *Dunlap*, 2018 WL 4782263, at *10.

This time, plaintiff alleges that "Mrs. Dunlap had a procedural due process right to have Mr. Dunlap arrested. Defendant Hodges did not arrest Mr. Dunlap." (First Am. Compl. ¶ 53). But this

KRAEMER & LEWIS
Not a Partnership
Employees of CIS (Citycounty Insurance Services)
P.O. Box 1469
Lake Oswego, OR 97035
Telephone: (800) 922-2684
Facsimile: (503) 763-3900

claim has been nullified by the Supreme Court's decision in *Town of Castle Rock, Colo. v. Gonzales*, 545 U.S. 748, 769 (2005) and its progeny.

The Due Process clause of the Fourteenth Amendment encompasses a guarantee of fair procedure. *Zinermon v. Burch*, 494 U.S. 113, 125 (1990). In the context of procedural due process claims, "the deprivation by state action of a constitutionally protected interest in 'life, liberty, or property' is not in itself unconstitutional; what is unconstitutional is the deprivation of such an interest *without due process of law*." *Id.* (emphasis in original). In these types of claims, the constitutional violation actionable under § 1983 is only complete when the state fails to provide due process. *Id.*

To determine whether a procedural due process violation has occurred, it is necessary to ask what process the state provided, and whether it was constitutionally adequate. *S.B. by & through Kristina B. v. California Dep't of Educ.*, 327 F. Supp. 3d 1218, 1239 (E.D. Cal. 2018). To state a procedural due process claim, a plaintiff must allege two distinct elements: (1) a deprivation of a constitutionally protected liberty or property interest; and (2) denial of adequate procedural protections. *Brewster v. Bd. of Educ. of Lynwood Unified Sch. Dist.*, 149 F.3d 971, 982 (9th Cir. 1998).

*Castle Rock* establishes that plaintiff's procedural due process claim based on the allegation that the failure to arrest Mr. Dunlap could somehow trigger due process protections for Mrs. Dunlap is not viable. There, the Supreme Court held that "[i]n light of today's decision and that in *DeShaney*, the benefit that a third party may receive from having someone else arrested for a crime generally does not trigger protections under the Due Process Clause, neither in its procedural nor in its 'substantive' manifestations." *Castle Rock*, 545 U.S. at 768.

In *Castle Rock*, the plaintiff brought an action under 42 U.S.C. § 1983 against the town, alleging that its police department's policy of failing to respond to complaints involving restraining order violations was a violation of the Due Process Clause. *Id.* at 750. Specifically, *Castle Rock* concerned enforcement of a restraining order against plaintiff's estranged husband,

KRAEMER & LEWIS
Not a Partnership
Employees of CIS (Citycounty Insurance Services)
P.O. Box 1469
Lake Oswego, OR 97035
Telephone: (800) 922-2684
Facsimile: (503) 763-3900

in which the Supreme Court found, despite the mandatory language in the relevant Colorado statute, that enforcement was not truly mandatory. *Id.* at 760. The Court noted "[a] well established tradition of police discretion has long coexisted with apparently mandatory arrest statutes" and a "true mandate of police action would require some stronger indication from the Colorado Legislature than 'shall use every reasonable means to enforce a restraining order.'" *Id.* at 760–61.

Focusing on the "deep-rooted nature of law-enforcement discretion, even in the presence of seemingly mandatory legislative commands," the Supreme Court stated that it did "not believe that these provisions of Colorado law truly made enforcement of restraining orders *mandatory.*" *Id.* at 760-61 (emphasis in original). And the Court stated that the indirect nature of the benefit that a third party might receive from having someone else arrested for committing a crime was likely fatal to a cognizable procedural due process claim. *Id.* at 766-68.

In *Burella v. City of Philadelphia*, 501 F.3d 134, 136 (3d Cir. 2007), Burella shot and seriously injured his wife, and then shot and killed himself. Although Mrs. Burella reported numerous incidents of abuse to the police over the years, obtained several restraining orders just days before the shooting, and told police that her husband continued threatening her despite the orders, police failed to arrest him. *Id.*

The appeal concerned whether the police officers had a constitutional obligation to protect Mrs. Burella from her husband's abuse. *Id.* Although the District Court ruled that Mrs. Burella did not have a viable substantive due process claim, it held that she had a procedural due process right to police protection based on the Pennsylvania Protection from Abuse Act and the protection from abuse orders issued by the Pennsylvania Court of Common Pleas. *Id.* at 140. The Third Circuit held that the officers did not have such an obligation and reversed the District Court's denial of qualified immunity to the officers on Mrs. Burella's due process claim. *Id.* at 136, 139.

Page 21 – **DEFENDANTS' MOTION TO DISMISS**
**PLAINTIFFS' FIRST AMENDED COMPLAINT**

**KRAEMER & LEWIS**
**Not a Partnership**
**Employees of CIS (Citycounty Insurance Services)**
**P.O. Box 1469**
**Lake Oswego, OR 97035**
**Telephone: (800) 922-2684**
**Facsimile: (503) 763-3900**

Mrs. Burella argued that the Supreme Court's decision in *Castle Rock* did not prevent her from succeeding on her procedural due process claim because the Pennsylvania statute stated that police "*shall arrest* a defendant for violating an order." *Id.* And the Pennsylvania statute did not, as the Colorado statute provided, state that police "*shall use every reasonable means* to enforce" the restraining order. *Id.* at 145. (emphasis in original). Therefore, she contended, under the Pennsylvania statute, police officers do not have discretion not to enforce a protection from abuse order. *Id.*

The Third Circuit noted that the Court in *Castle Rock* unambiguously stated that absent a "clear indication" of legislative intent, a statute's mandatory arrest language should not be read to strip law enforcement of the discretion they have traditionally had in deciding whether to make an arrest. *Id.* And Mrs. Burella's argument failed to address the Supreme Court's observation in *Castle Rock* that even if the Colorado domestic violence statute mandated an arrest, it would not necessarily mean the victim would have an "entitlement" to an arrest. *Id.* That is, although the Pennsylvania statute allowed a victim of domestic violence to "file a private criminal complaint against a defendant, alleging indirect criminal contempt" for violation of a protective order, or "petition for civil contempt" against the violator, like the Colorado statute, it was silent as to whether a victim could request, much less demand, an arrest. *Id.*

The Third Circuit also could not ignore that despite framing the issue as one of procedural due process, what Mrs. Burella appeared to seek was a substantive due process remedy: that is, the right to an arrest itself, and not the pre-deprivation notice and hearing that are the hallmarks of a procedural due process claim. *Id.* at 146. Whether framed as a substantive due process right under *DeShaney v. Winnebago County Department of Social Services,* 489 U.S. 189 (1989) or a procedural due process right under *Board of Regents v. Roth,* 408 U.S. 564 (1972), Mrs. Burella did not have a cognizable claim that the officers' failure to enforce the orders of protection violated her due process rights. *Id.* Therefore, the court did not need to

**KRAEMER & LEWIS**
**Not a Partnership**
**Employees of CIS (Citycounty Insurance Services)**
**P.O. Box 1469**
**Lake Oswego, OR 97035**
**Telephone: (800) 922-2684**
**Facsimile: (503) 763-3900**

determine whether her entitlement to police protection was "clearly established" at the time of the alleged violation before concluding that the officers were entitled to qualified immunity. *Id.*

Here, like plaintiff's prior substantive due process claim, her reliance on ORS 133.055[2] as a basis for the amended procedural due process claim against Officer Hodges is misplaced because ORS 133.055 does not create municipal liability for a subsequent suicide such as occurred here. And as the Ninth Circuit noted in *Ove v. Gwinn,* 264 F.3d 817, 824 (9th Cir. 2001), to state a claim under Section 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States. To the extent that the violation of a state law amounts to the deprivation of a state-created interest that reaches beyond that guaranteed by the federal Constitution, Section 1983 offers no redress. *Id.*

Even in a case where the failure to arrest a husband under ORS 133.055 was alleged to be responsible for the man's subsequent murder of his wife, this Court found no liability by the police under Section 1983. In *Patten v. Leach*, No. 3:15-CV-0891-AC, 2016 WL 5928803, at *5 (D. Or. Oct. 11, 2016), this Court noted that, like the Colorado statute at issue in *Castle Rock*, the language in ORS 133.055 appears mandatory in that it states an officer "*shall*" arrest an alleged or potential assailant when probable cause is present but is not "truly" mandatory. Specifically, despite probable cause to believe an assault, menacing, or strangulation has occurred, an officer likely has some discretion to determine that the circumstances of the situation weigh against arrest in a particular domestic violence instance. *Id.*; *Castle Rock*, 545 U.S. at 761-62.

In *Patten*, this Court concluded that the officers charged with arresting an assailant or alleged assailant in a domestic violence situation where there is probable cause must have some discretion to prioritize the importance of an arrest given the circumstances. *Patten*, 2016 WL

---

[2] Under ORS 133.055(2)(a):

> [W]hen a peace officer responds to an incident of domestic disturbance and has probable cause to believe that an assault has occurred between family or household members, . . . , or to believe that one such person has placed the other in fear of imminent serious physical injury, the officer shall arrest and take into custody the alleged assailant or potential assailant.

**Page 23 – DEFENDANTS' MOTION TO DISMISS**
**PLAINTIFFS' FIRST AMENDED COMPLAINT**

KRAEMER & LEWIS
Not a Partnership
Employees of CIS (Citycounty Insurance Services)
P.O. Box 1469
Lake Oswego, OR 97035
Telephone: (800) 922-2684
Facsimile: (503) 763-3900

5928803, at *5.  Accordingly, because police officers have some discretion whether to grant or deny the benefit conferred in ORS 133.055, it is not a protected entitlement that creates a special relationship entitled to due process protections.  *Id.*; *Castle Rock*, 545 U.S. at 756.  Moreover, even if it were, the indirect nature of the benefit was fatal to the estate's due process claim. *Patten*, 2016 WL 5928803, at *5; *Castle Rock*, 545 U.S. at 767.

The same is true in this case, only more so, where this time the allegations try to shoehorn the attenuated facts into a Section 1983 procedural due process claim.  If there were no procedural due process violations in *Castle Rock* and *Burella*, there can be none here, where the only harm inflicted was by decedent Dunlap to himself.  Because the failure to arrest decedent under the domestic violence statute cannot serve as the basis of a viable Section 1983 claim, it should be dismissed with prejudice.

**D.    Individual Defendant Hodges is Entitled to Qualified Immunity Because His Allegedly Unlawful Actions Did Not Violate Any Clearly Established Constitutional Right.**

To the extent that defendant Hodges is not dismissed because the Section 1983 due process claim against him is time barred, Hodges should be dismissed for the additional reason that his alleged actions are protected by qualified immunity.  (First Am. Compl. ¶¶ 51-56). Entitlement to qualified immunity is an issue which courts are encouraged to resolve at the earliest possible juncture in order to relieve the official asserting the immunity from the multitude of burdens associated with litigation.  *Pearson v. Callahan,* 555 U.S. 223 (2009).

Public officials are immune from suit under 42 U.S.C. § 1983 unless they have violated a statutory or constitutional right that was clearly established at the time of the challenged conduct. *City & Cty. of San Francisco, Calif. v. Sheehan*, 135 S. Ct. 1765, 1774, 191 L. Ed. 2d 856 (2015).  An officer cannot be said to have violated a clearly established right unless the right's contours were sufficiently definite that any reasonable official in his shoes would have understood that he was violating it, meaning that existing precedent placed the statutory or constitutional question beyond debate.  *Id.*  This exacting standard gives government officials

**KRAEMER & LEWIS**
Not a Partnership
**Employees of CIS (Citycounty Insurance Services)**
P.O. Box 1469
Lake Oswego, OR 97035
Telephone: (800) 922-2684
Facsimile: (503) 763-3900

breathing room to make reasonable but mistaken judgments by protecting all but the plainly incompetent or those who knowingly violate the law. *Id.*

The Supreme Court has repeatedly told courts not to define clearly established law at a high level of generality. *Mullenix v. Luna*, 136 S. Ct. 305, 308, 193 L. Ed. 2d 255 (2015). The dispositive question is whether the violative nature of *particular* conduct is clearly established. *Id.* This inquiry must be undertaken in light of the specific context of the case, not as a broad general proposition. *Id.*

Here, there is controlling authority from *Castle Rock* that "squarely governs" the factual circumstances present here, *Mullenix*, 136 S. Ct. at 309, and legal authority that establishes "beyond debate" that the conduct of Officer Hodges prior to Mr. Dunlap's suicide was not constitutionally inadequate. *White v. Pauly*, 137 S. Ct. 548, 551, 196 L. Ed. 2d 463 (2017). Under these facts, Officer Hodges is entitled to qualified immunity from plaintiff's procedural due process claim. *Id.*

**E.     Plaintiff's Monell Claim Against the City Fails as a Matter of Law.**

1.     The *Monell* Claim Based on a Failure to Train was Dismissed with Prejudice.

This Court dismissed with prejudice plaintiff's *Monell* claim based on an alleged failure to train pursuant to the F&R[3] adopted by Judge Hernandez. (10/3/18 Order, p. 1-2). Yet plaintiff's procedural due process claim against the City realleges her failure-to-train claim, relying on the same language: "Defendant City failed to train officers to interact with mentally ill persons and their family members to the extent that failure to train amounts to deliberate indifference to the right of

---

[3] Adopted by Judge Hernandez, the F&R recommended as follows:

> For the same reason, plaintiffs' *Monell* claim (Resp. at 22-23, 33-34) also fails. *See Green v. Tri-County Metro. Transp. Dist.*, 909 F. Supp. 2d 1211, 1220 (D. Or. 2012) (analogizing ADA claim to a failure-to-train claim brought under § 1983). These claims should be dismissed with prejudice.

*Dunlap*, 2018 WL 4782263, at *6.

**Page 25 – DEFENDANTS' MOTION TO DISMISS**
**PLAINTIFFS' FIRST AMENDED COMPLAINT**

**KRAEMER & LEWIS**
**Not a Partnership**
**Employees of CIS (Citycounty Insurance Services)**
**P.O. Box 1469**
**Lake Oswego, OR 97035**
**Telephone: (800) 922-2684**
**Facsimile: (503) 763-3900**

persons with whom the police come in contact." (Compl. ¶ 53; First Am. Compl. ¶ 58). The Court should once again dismiss this basis for the *Monell* claim with prejudice.

To the extent that the Court reconsiders this claim, it fails for the same reasons discussed in the City's original motion to dismiss and in Section III.E.2 below.

    2.    Failure to Train or Inadequate <u>Policy *Monell* Claims Require Actual Or Constructive Notice to the City.</u>

Plaintiff also repeats with minor variation the allegation that "[a]t all times material, Defendant had unconstitutional policies and procedures for interacting with mentally ill persons." (Compl. ¶ 53; First Am. Compl. ¶ 58). To the extent the Court reconsiders the *Monell* claim based on any alleged "customs, policies, practices, or procedures for interacting with mentally ill persons," it also fails to state a claim. (First Am. Compl. ¶ 58).

In effect, this *Monell* claim alleging that the City "refus[ed] to provide services or aid to individuals or families of individuals suffering from mental illness" is an allegation of a policy or custom of omission or inaction. (First Am. Compl. ¶ 58); *Deloney v. Cty. of Fresno*, No. 117CV01336LJOEPG, 2018 WL 3388921, at *10 (E.D. Cal. July 11, 2018). Such claims are subject to "heightened requirements for establishing responsibility" which are necessary to avoid inappropriately imposing *respondeat superior* liability in violation of *Monell*. *Tsao v. Desert Place, Inc.,* 698 F.3d 1128, 1143 (9th Cir. 2012).

Policy omission claims require "actual or constructive notice that its omission would likely result in a constitutional violation." *Tsao*, 698 F.3d at 1145. And liability for improper custom may not be predicated on isolated or sporadic incidents; it must be founded upon practices of sufficient duration, frequency and consistency that the conduct has become a traditional method of carrying out policy. *Trevino v. Gates,* 99 F.3d 911, 918 (9th Cir. 1996).

Relatedly, in considering failure to train claims, "a pattern of similar constitutional violations by untrained employees is ordinarily necessary to demonstrate deliberate indifference." *Id.*; *Connick v. Thompson*, 563 U.S. 51, 62 (2011); *Christie v. Iopa*, 176 F.3d 1231, 1235 (9th Cir. 1999) ("[a] single constitutional deprivation ordinarily is insufficient to establish a longstanding

**KRAEMER & LEWIS**
**Not a Partnership**
**Employees of CIS (Citycounty Insurance Services)**
**P.O. Box 1469**
**Lake Oswego, OR 97035**
**Telephone: (800) 922-2684**
**Facsimile: (503) 763-3900**

practice or custom").  The absence of a pattern makes it "far less likely" that an entity was "on actual or constructive notice." *Tsao*, 698 F.3d at 1145.  "That a particular officer may be unsatisfactorily trained," or that an injury may have been avoided with "better or more training," will "not alone suffice to fasten liability on [a public body]".  *City of Canton*, 489 U.S. at 390-91.

A public entity's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train.  *Connick*, 563 U.S. at 61.  A policy of "inadequate training" is far more nebulous, and a good deal further removed from the constitutional violation, than was the policy in *Monell*.  *Id.*

Here, plaintiff has not alleged a pattern of constitutional violations by SPD officers resulting in other suicides that would provide the City with any kind of notice concerning its policy deficiencies or failure to train.  *Figueira ex rel. Castillo v. County of Sutter*, No. 2:15-CV-00500, 2015 WL 6449151, at *8 (E.D. Cal. Oct. 23, 2015) (dismissing claim for municipal liability and noting "[plaintiff's] suicide alone does not plausibly establish that Yuba and Sutter County provided employees with inadequate training by de facto policy" even where two other deaths in the previous three years were alleged); *NeSmith v. Cty. of San Diego*, No. 15CV629, 2016 WL 4515857, at *16 (S.D. Cal. Jan. 27, 2016) (holding that amended complaint "does not plausibly show that the County had notice of a pattern of suicides, such that failing to change its policies or provide additional training would lead to violations of constitutional rights" even where plaintiffs pleaded statistics that San Diego County jail system had the highest mortality rate and second highest suicide rate among the state's largest jails; such facts were "too vague to establish the pattern of violations necessary to prove deliberate indifference in § 1983 actions alleging failure to train or failure to implement policies").  Accordingly, plaintiff's *Monell* claim fails as a matter of law.

## IV.    CONCLUSION

Dismissal without leave to amend is proper if it is clear that the complaint could not be saved by amendment.  *Kendall v. Visa U.S.A., Inc.*, 518 F.3d 1042, 1051 (9th Cir. 2008);

**Page 27 – DEFENDANTS' MOTION TO DISMISS**
**PLAINTIFFS' FIRST AMENDED COMPLAINT**

KRAEMER & LEWIS
Not a Partnership
Employees of CIS (Citycounty Insurance Services)
P.O. Box 1469
Lake Oswego, OR 97035
Telephone: (800) 922-2684
Facsimile: (503) 763-3900

*Abagninin v. AMVAC Chem. Corp.,* 545 F.3d 733, 742 (9th Cir. 2008) (leave to amend may be denied for repeated failure to cure deficiencies by previous amendment).  That is the case here, where defendant Hodges should be dismissed as a matter of law on statute of limitations grounds.  And, for the foregoing reasons, plaintiff's ADA, RA, and Section 1983 claims against the City should be dismissed with prejudice because plaintiff should not be given a third opportunity to re-allege these claims that have no demonstrated basis in fact and law.

Respectfully submitted this 31st day of December 2018.

KRAEMER & LEWIS

By:    */s/ Steven A. Kraemer*
Steven A. Kraemer, OSB No. 882476
David C. Lewis, OSB No. 953348
Of Attorneys for Defendants

**KRAEMER & LEWIS**
**Not a Partnership**
**Employees of CIS (Citycounty Insurance Services)**
**P.O. Box 1469**
**Lake Oswego, OR 97035**
**Telephone: (800) 922-2684**
**Facsimile: (503) 763-3900**